**SECOND DIVISION**
**BARNES, P. J.,**
**BOGGS and RICKMAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**July 13, 2016**

# In the Court of Appeals of Georgia

A16A0519. SMITH v. THE STATE.

BOGGS, Judge.

In the second appearance of this case before this court, Jason Smith appeals from his conviction of driving with a blood alcohol level of 0.08 grams or more in violation of OCGA § 40-6-391 (a) (5) (DUI per se). Smith contends that we must once again remand this case to the trial court for entry of an order with adequately supported factual findings and the correct balancing of the four speedy trial factors outlined in *Barker v. Wingo*, 407 U. S. 514 (92 SCt 2182, 33 LE2d 101) (1972). He asserts in the alternative that we should conclude that the trial erred by failing to grant his motion for an acquittal based upon a violation of his federal and state constitutional rights to a speedy trial. For the reasons explained below, Supreme Court of Georgia precedent requires us to vacate the trial court's order denying

Smith's motion for discharge and acquittal and remand this case again to the trial court.

The record shows that on May 5, 2007, Smith was arrested for DUI less safe and DUI per se following an accident on an interstate highway. He was convicted of DUI per se in a bench trial on June 1 2012, five years and 28 days later. Smith was not incarcerated during this time period as he was released on bond the day after this arrest.

Following his arrest, Smith was instructed to appear in the City of Atlanta Municipal Court on May 7, 2007. According to representations of the State during the hearing on the motion for discharge and acquittal, the case remained in municipal court through February of 2008, at which time it was transferred to Fulton County State Court. The State asserted that some of the transfer delay was "for the defense to review the video; for the defense to consider the offer; not within the defense's control, but I believe there was a family member that was ill." We cannot determine from the record before us whether Smith was represented by counsel while the case was pending in municipal court.

On August 13, 2008, 15 months after Smith's arrest, the State filed an accusation against him charging him with DUI less safe and DUI per se. On October

2, 2008, Smith's counsel filed various motions seeking discovery from the State, including source code information for the Intoxilyzer 5000 machine that was used to test his breath on the day of his arrest.

The case appeared on a bench trial calendar published on November 13, 2008, but there was no date for the trial specified.[1] According to the parties, the case was "reset" because Smith did not waive his right to a jury trial. The State had not yet responded to Smith's discovery requests at the time this bench trial notice was issued. On the same day the notice was published, Smith filed a motion asking that the clerk be ordered to release his surety under OCGA § 17-6-31 (e) because the State had failed to try him within one year after he posted bond on his misdemeanor arrest (May of 2007). The trial court granted this motion on December 2, 2008.

On January 5, 2009, Smith's counsel filed a request for leave of absence for a series of 12 dates from February through June of 2009. The reason for one request was a seminar, and the remaining 11 were for unspecified personal leave.[2]

---

[1] In the blank space on the form titled "Trial Date," the words "Further Notice" were typed.

[2] The specific dates follow: Thursday, February 5, 2009 - Friday, February 6, 2009; Thursday, February 12, 2009; Friday, February 27, 2009; Monday, March 2, 2009 - Tuesday, March 3, 2009; Monday, March 9, 2009 - Friday March 13, 2009; Monday, March 16, 2009; Friday, March 20, 2009; Monday, April 13, 2009 - Friday,

3

On March 4, 2009, the case was placed on jury trial calendar beginning Monday, May 4, 2009. We cannot determine from the record before us whether the leave of absence requests delayed the scheduling of trial between the previous November 2008 bench trial notice and the first jury trial date of May 4, 2009. At the time the court scheduled the jury trial, however, it still had not ruled upon the motion filed by Smith five months earlier requesting an order determining the relevance and materiality of the source code.

On April 23, 2009, 11 days before the first scheduled jury trial date and over 6 months after Smith's request, the State filed a response to Smith's discovery requests and produced a witness list, a copy of the accusation and uniform traffic citations, a copy of the incident report concerning his arrest, and a copy of the intoxilyzer slip. According to the State, the case was not reached on the May jury trial calendar. There is no evidence that Smith sought a continuance of the case on that date for any reason.

Between May 2009 and August 31, 2011, the case was not scheduled for trial, and the trial court still had not ruled upon Smith's motion for an order determining

April 17, 2009; Monday, April 20, 2009; Monday, May 11, 2009 - Tuesday, May 12, 2009; Monday, June 8, 2009 - Thursday, June 11, 2009.

4

the source code to be material and relevant.[3] We cannot determine from the record before us whether the leaves of absence requests during this time frame resulted in the case not being placed on a trial calendar for approximately 15 months.[4]

---

[3] A seminal case addressing the standard for determining the materiality and relevance of source code evidence was winding its way through our appellate courts during this time period. See *Davenport v. State*, 289 Ga. 399 (711 SE2d 699) (2011). The case was first docketed in this court on April 22, 2009 and decided on February 11, 2010. *Davenport v. State*, 303 Ga. App. 401(693 SE2d 510) (2010). The Georgia Supreme Court granted a writ of certiorari on September 20, 2010, and issued its opinion on June 20, 2011. When the trial court granted Smith's request for a certificate of materiality in October of 2011, it cited only to the Georgia Supreme Court's decision in *Davenport*, supra.

[4] In June 2009, Smith filed another request for leave of absence for series of 13 dates for unspecified personal leave from July 2009 into January 2010. The specific dates are: Wednesday, July 8, 2009 - Friday July 10, 2009; Monday, July 27, 2009 - Friday, July 31, 2009; Thursday, August 6, 2009 - Friday, August 7, 2009; Monday, August 10, 2009 - Friday, August 14, 2009; Monday, August 17, 2009; Monday, August 31, 2009 - Thursday, September 3, 2009; Monday, September 14, 2009 - Friday, September 18, 2009; Monday, October 12, 2009 - Friday, October 16, 2009; Monday, October 19, 2009; Monday, November 23, 2009 - Friday, November 27, 2009; Monday, November 30, 2009; Monday, December 28, 2009 - Thursday, December 31, 2009; Monday, January 4, 2010 - Wednesday, January 6, 2010.

In April 2010, his counsel filed a request for leave of absence for a series of ten dates from July 2010 through December 2010 for unspecified personal leave. The specific dates are: The specific dates follow: Monday, July 5, 2010 - Friday July 9, 2010; Monday, July 12, 2010; Monday, August 9, 2010 - Friday, August 13, 2010; Monday, September 13, 2010 - Friday, September 17, 2010; Monday, October 11, 2010 - Wednesday, October 13, 2010; Friday, October 29, 2010; Monday, November 1, 2010; Monday, November 22, 2010 - Friday, November 26, 2010; Thursday, December 23, 2010 - Friday, December 24, 2010; Monday, December 27, 2010 - Friday, December 31, 2010.

On August 31, 2011, the case was set on a trial calendar beginning Thursday, September 22, 2011. On September 9, 2011, defense counsel attempted to serve a subpoena upon CMI, Inc. in Kentucky seeking production of source code information at the trial scheduled for September 22, 2011. On the same day as the scheduled September trial, Smith filed a request for issuance of an out-of-state subpoena to CMI, Inc. along with a proffer of the need for source code evidence, which included a copy of an expert witness affidavit submitted in an unrelated criminal case. We cannot determine from the record why the case was not tried on this date, but the trial court had still not ruled upon Smith's motion seeking a determination that the source code was material and relevant.

---

On March 7, 2011, Smith's counsel filed a request for leave of absence for unspecified personal leave from April 2011 into August 2011. The specific dates are: The specific dates follow: Monday, April 18, 2011 - Friday, April 22, 2011; Thursday, May 19, 2011 - Wednesday, May 25, 2011; Monday, June 13, 2011 - Monday, June 20, 2011; Monday July 25, 2011 - Friday, August 5, 2011.

On June 27, 2011, Smith's counsel filed a request for leave of absence for unspecified personal leave for a series of eight dates from June 2011 into November 2011. The specific dates follow: Thursday, June 2, 2011 - Friday, June 3, 2011; Monday, June 13, 2011 - Monday, June 20, 2011; Friday, June 24, 2011; Friday, July 15, 2011; Monday, July 18, 2011; Monday, August 1, 2011 - Monday, August 15, 2011; Monday, September 12, 2011 - Friday, September 16, 2011; Monday, October 10, 2011 - Friday, October, 14, 2011; Monday, October, 31, 2011 - Tuesday, November 1, 2011.

On October 6, 2011, the trial court issued an order finding the source code evidence material and granted Smith's request for a certificate of materiality under OCGA § 24-10-94. This order was issued over three years after Smith had first sought such a determination from the trial court.

The record does not show when Smith first petitioned a Kentucky court to obtain a subpoena directing CMI to appear in Georgia. It does show, however, that on February 17, 2012, a Kentucky Circuit Court judge signed a consolidated protective order allowing source code access to criminal defendants and their attorneys and expert witnesses, as well as court personnel. Numerous petitioners were listed on the protective order, including Jason Smith. A few days later, the Kentucky trial court issued an order denying Smith's request for a subpoena of source code information, concluding that the various orders issued by Georgia courts were defective on their face and authorized the disclosure of information that was not "material" or "necessary." On March 16, 2012, Smith, as well as other petitioners, filed a notice of appeal with the Kentucky Court of Appeals.[5]

[5] In a published and final opinion issued on June 13, 2014, a three-judge panel of the Kentucky Court of Appeals dismissed the consolidated appeals of the Georgia petitioners based upon a procedural defect in the appellants' brief. *Krugman v. CMI, Inc.*, 437 SW3d 167 (Ky. App. 2014). One of the judges "concur[red] with the result reached by the majority," but would have "affirm[ed] on the merits of the appeal of

7

During the time that Smith attempted to obtain the source code in Kentucky after receiving a ruling from the trial court in October 2011, his case appeared on two trial calendars.[6] According to the State, the case "was tabled several times while we waited to hear the outcome." While Smith's counsel also filed leaves of absence during this time period,[7] we cannot determine whether they may have had any impact on the scheduling of the case for trial, particularly in light of the State's representation that this case was tabled.

_____

the Circuit Court's orders." Id. at 171.

[6] On December 27, 2011, the case was placed on a trial calendar beginning on Friday, February 3, 2012. The case was not tried on this date, nor on a subsequent trial calendar beginning Friday, April 27, 2012.

[7] On September 15, 2011, Smith's counsel filed a request for a leave of absence for a series of seven dates from October into February 2012. The specific dates that are not duplicative of the previous leave request follow: Monday, November 7, 2011 - Friday, November 11, 2011 (preparation for vehicular homicide case); Monday, November 14, 2011 - Friday, November 18, 2011 (specially set vehicular homicide case); Monday, November 21, 2011 - Monday, November 28, 2011 (personal leave); Thursday, December 22, 2011 - Tuesday, January 3, 2012 (personal leave); Tuesday, January 31, 2012 - Monday, February 6, 2012 (personal leave).

On January 4, 2012, Smith's counsel filed an additional leave of absence request for the following dates, citing personal leave as the reason for each: Monday, January 30, 2012- Monday, February 6, 2012; Friday, February 17, 2012 - Thursday, February 23, 2012; Thursday, March 15, 2012 - Tuesday, April 3, 2012; Monday, April 16, 2012 - Monday, April 23, 2012; Wednesday, May 16, 2012 - Wednesday May 23, 2012.

Smith was tried on June 1, 2012, while his Kentucky appeal was pending.[8] On the day of trial, he asserted his constitutional right to a speedy trial for the first time.[9] Defense counsel also asked the trial court to exclude the breath test because he had not yet been able to obtain the source code. In the alternative, he asked the trial court to "reset this case to allow us to go do the source," presumably after an anticipated favorable ruling by the Kentucky Court of Appeals. The trial court denied Smith's motion to exclude the breath test and the request for a reset. It later ruled from the bench during the middle of trial that Smith's motion for discharge and acquittal was denied. In *Smith v. State*, 325 Ga. App. 405 (750 SE2d 758) (2013) (*Smith I*), this court concluded sufficient evidence supported Smith's conviction. We also determined that the trial court did not err by denying Smith's request for a continuance until after a Kentucky appellate court resolved his appeal of the Kentucky trial court's order denying his request to compel out-of-state witnesses to

---

[8] Defense counsel's last leave of absence filed on May 8, 2012 did not result in a delay of the trial that took place 13 days later on June 1 because it requested leave for dates beginning on June 7, 2012. Likewise, it is unknown whether the sole leave request that fell between the last scheduled trial date of April 27, 2012 and June 1, 2012 resulted in a delay.

[9] At no time did Smith file a statutory demand for a speedy trial. See OCGA § 17-7-170 (a).

testify about the source code for the Intoxilyzer 5000. Id. at 410 (4). Finally, we remanded the case to the trial court "for entry of a proper order addressing the speedy trial motion pursuant to *Barker v. Wingo*." Id. at 411 (5).

The trial court then issued the following order on January 13, 2015:

> The above-styled action came before the Honorable Court for hearing on June 1, 2012 [the trial date] on Defendant's MOTION FOR DISCHARGE AND ACQUITTAL. After hearing the evidence and arguments of counsel for both parties, and upon consideration and evaluation of Defendant's constitutional speedy trial claims according to the four-part test established in *Barker v. Wingo*, [supra], the Court denied Defendant's said motion. Consistent with *Higgenbottom v. State*, 288 Ga. 429 [(]704 SE2d 786[)] (2011), the Court hereby sets forth its findings of fact and conclusions of law as follows:
>
> 1. *Length of delay*. The Defendant was arrested on May 5, 2007 and his instant Motion was heard by the Court on June 1, 2012. The Court finds that a delay of five years in this case is presumptively prejudicial. Accordingly, the Court must analyze the other three *Barker* factors to determine if Defendant's constitutional right to a speedy trial was denied.
>
> 2. *Reason for delay*. The court finds that the reason for the delay rests primarily with the Defendant. At the pre-trial stage, Defendant had sought discovery of proprietary source code information from the maker of the Intoxilyzer 5000 machine used in this case, CMI, Inc., a Kentucky corporation. The delay resulted from Defendant's efforts to

10

compel production of such source code information via motion filed with and hearings held in this Court as well as in the Kentucky court to compel CMI's production of the requested information. Having been unsuccessful in his motions to compel the production, Defendant then sought appellate review which resulted in additional delay. The Court further finds that the State lacked access to the source code information and did not otherwise contribute to the delay.

3.  *Defendant's assertion of his right to a speedy trial*. The Court finds that Defendant did not demand a speedy trial or assert his right to a speedy trial during the period between his arrest and the hearing on the instant motion, at which time he finally asserted his constitutional right to a speedy trial. Accordingly, this delay in asserting his right to a speedy trial must be weighed against Defendant.

4.  *Prejudice to the Defendant*. As to oppressive pre-trial incarceration, the Court finds that such factor is not at issue in this case as Defendant was released from jail soon after his arrest and had been free on bond since his release. As to minimizing anxiety and concern of the Defendant, the Court finds that "anxiety and concern . . . is always present to some extent, and thus absent some unusual showing is not likely to be determinative in defendant's favor." *Weems v. State*, 310 Ga. App. 590 [(]714 SE2d 119[)] (2011).

11

Here, the Court finds that Defendant failed to present evidence that he suffered undue or unusual anxiety. Furthermore, the Court finds that the Defendant's ability to defend the charges has not been impaired by the delay.

Having weighed and considered the *Barker* factors as set forth above, the Court hereby **DENIES** Defendant's Motion for Discharge and Acquittal.

1. We now determine whether Supreme Court precedent requires us to remand this case to the trial court to consider again whether Smith was denied his right to a speedy trial. See, e. g., *State v. Johnson*, 291 Ga. 863, 868 (3) (734 SE2d 12) (2012).

Both the Sixth Amendment of the United States Constitution and the Georgia Constitution provide that criminal defendants shall have the right to a speedy trial. See *Brewington v. State*, 288 Ga. 520, 520 (1) (705 SE2d 660) (2011). When analyzing a constitutional speedy trial claim, this Court must first determine "whether the interval from the accused's arrest, indictment, or other formal accusation to the trial is sufficiently long to be considered 'presumptively prejudicial.' If not, the speedy trial claim fails at the threshold." (Citations and punctuation omitted.) *Ruffin v. State*, 284 Ga. 52, 55 (2) (663 SE2d 189) (2008). If, however, the delay is

presumptively prejudicial, the defendant's claim is then analyzed under the rubric of

*Barker*, which established a four-part balancing test to consider:

> (1) the length of the delay; (2) reasons for the delay; (3) defendant's assertion of the right to speedy trial; and (4) the prejudice to the defendant. Standing alone, none of these factors are a necessary, or sufficient condition to a finding of deprivation of the right to a speedy trial, but rather should be considered as part of a balancing test.

(Citations and punctuation omitted.) *Bowling v. State*, 285 Ga. 43, 44 (1) (673 SE2d 194) (2009).

"In Georgia, the application of these principles to the circumstances of a particular case is a task committed principally to the discretion of the trial courts, and it is settled law that our role as a court of review is a limited one." (Citations and footnote omitted.) *State v. Buckner*, 292 Ga. 390, 391 (738 SE2d 65) (2013). Therefore, "we must accept the factual findings of the trial court unless they are clearly erroneous, and we must accept the ultimate conclusion of the trial court unless it amounts to an abuse of discretion, even though we might have reached a different conclusion were the issue committed to our discretion." (Citations omitted.) Id.

(a) *Length of Delay*. While the trial court properly concluded that the five-year delay[10] between Smith's arrest and trial was presumptively prejudicial, it failed to consider the length of the delay for a second time[11] "as one of the *four* criteria that must be weighted in the balance at the second stage of the analysis." (Citation and punctuation omitted; emphasis supplied.) *Stewart v. State*, 310 Ga. App. 551, 553 (2) (a) (713 SE2d 708) (2011). And it did not assign weight for this uncommonly long delay. Id. at 554.

(b) *Reasons and Responsibility for the Delay*. "The second factor in the *Barker-Doggett* analysis requires the court to examine both the reason for the delay and whether this is attributable to the defendant or the state." (Citation and

---

[10] Smith incorrectly asserts that the trial court should consider the time period this case has been on appeal in calculating the delay. This time period is considered only in cases where the case has not yet been tried. See *Cawley v. State*, 324 Ga. App. 358, 360 (750 SE2d 428) (2013). As this is not such a case, the trial court properly considered only the time period between Smith's arrest and trial. See *Phan v. State*, 290 Ga. 588, 593 (1) (a) (723 SE2d 876) (2012).

[11] In its order, the trial court noted that the delay was presumptively prejudicial, and then stated that it accordingly "must analyze the *other three Barker* factors to determine if Defendant's constitutional right to a speedy trial was denied." (Emphasis supplied.) But a finding of presumptive prejudice triggers a balancing and weighing of *four* factors under *Barker*. And at the end of its order, it stated that it had "weighed and considered the *Barker* factors *as set forth above*." (Emphasis supplied.)

punctuation omitted.) *Thomas v. State*, 331 Ga. App. 641, 661-662 (8) (b) (ii) (771 SE2d 255) (2015).

> This factor, which examines whether the defendant or the State bears more responsibility for the delay, is "pivotal in evaluating the strength of a constitutional speedy trial claim, as it can color the consideration of all other factors." Deliberate delay intended to hinder the defense must be weighed heavily against the State, whereas delay occasioned by more "neutral" causes, such as negligence or overcrowded dockets, weighs less heavily against the State. On the other hand, delay caused by the defense weighs against the defendant.

(Citations omitted.) *Phan v. State*, 290 Ga. 588, 593 (1) (b) (723 SE2d 876) (2012).

In its order, the trial court concluded that "the reason for the delay rests primarily with the Defendant" based upon his efforts to obtain the source code. It also found that "the State lacked access to the source code information and did not otherwise contribute to the delay." The trial court did not break down the overall pretrial delay into relevant time periods and assign responsibility for delay to each time period. Nor did it conclude whether the delay should be weighed heavily, slightly, or neutrally against Smith. "Because of the procedural complexity of this case, the trial court could not have exercised its discretion properly under the *Barker* test without doing so." *Thomas*, supra, 331 Ga. App. at 662 (8) (b) (ii).

15

For example, the trial court did not consider the 15-month delay between Smith's May 7, 2007 arrest and the filing of an accusation by the State on August 13, 2008, the impact, if any, of the numerous leave of absence requests filed by defense counsel,[12] the reasons why the State took six months to respond to Smith's request for reciprocal discovery, its three-year delay in ruling on Smith's request for a finding that the source code was material and relevant, why the case appeared on no trial calendars between May 2009 and August 2011, and whether defense counsel's efforts to obtain the source code were diligent and timely. When considering these time periods, the trial court should bear in mind that "[b]ecause the attorney is the defendant's agent when acting, or failing to act, in furtherance of the litigation, delay caused by the defendant's counsel is charged against the defendant." (Citation and punctuation omitted.) *Thomas*, 331 Ga. App. at 664 (8) (b) (ii) n. 33. However, the "filing of numerous motions does not automatically mean that any associated delay should be assigned to [the defendant]." Id. at 664 (8) (b) (ii). Delay caused by the pursuit of legitimate motions is "relatively benign." *Jenkins v. State*, 294 Ga. 506, 512 (2) (b) (2) (iii) (755 SE2d 138) (2014). "And finally, "[w]here no reason appears for

---

[12] See *Stewart*, supra, 310 Ga. App. at 555 (2) (trial court may attribute portion of pretrial delay to defense counsel leaves of absence).

a delay, we must treat the delay as caused by the negligence of the [S]tate in bringing the case to trial." (Citation and punctuation omitted.) *Cawley v. State*, 330 Ga. App. 22, 26 (2) (b) (766 SE2d 581) (2014). "[T]he responsibility for the untimely disposition of court proceedings rests with the courts and delays attributable to the courts are attributable to the State." *Jenkins*, supra, 294 Ga. at 511 (2) (b) (2) (i).

(c) *Defendant assertion of the right*. Smith did not assert his constitutional right to a speedy trial until over five years after his arrest on the day he was actually tried. See id. at 27 (2) (c) (motion for acquittal asserts constitutional right to speedy trial). While the trial court weighed this factor against Smith, it did not specify whether it weighed against him slightly or heavily. Additionally, it did not examine whether Smith asserted his right to a speedy trial "in due course." *Phan*, supra, 290 Ga. at 595 (1) (c). "[T]he accused is not required to demand a speedy trial at the first opportunity." *Buckner*, supra, 292 Ga. at 396 (3) (c).

> To assess whether the accused insisted "in due course" upon his right to a speedy trial "requires a close examination of the procedural history of the case with particular attention to the timing, form, and vigor of the accused's demands to be tried immediately." And because delay often works to the defendant's advantage, the failure of the accused to assert his right in due course generally is accorded "strong evidentiary weight."

17

(Citations omitted.) Id. at 397 (3) (c). A defendant's late assertion of a right to speedy trial may be mitigated by a defendant's insistence on his right to discovery. Id. One of the factors that a trial court may consider in this context is whether, during the time that discovery was not forthcoming from the State, the defendant "was insisting in the meantime that the State comply with its obligations to furnish discovery." (Citations and punctuation omitted.) Id. Additionally, "a trial court has discretion to mitigate the weight given this factor when a defendant fails to assert his right during the period between arrest and indictment if he was out on bond and without counsel. [Cit.]" *State v. Pickett*, 288 Ga. 674, 676 (2) (c) (3) (706 SE2d 561) (2011). Furthermore, announcements that a defendant is ready for trial can also mitigate the weight of a late assertion. *Johnson*, supra, 291 Ga. at 868 (3). In this case, Smith sought to compel production of the source code in connection with previous trial calendars and the record before us does not show that he sought any continuances of those trial dates.

As the Supreme recently clarified: "Although the failure to promptly assert the right to a speedy trial ordinarily weighs heavily against defendant, *Pickett*, 288 Ga. at 677 (2) (c) (3), we have acknowledged in previous decisions that the weight to be attributed to this factor may be mitigated in some cases, and whether the circumstances of a particular case warrant any mitigation is a question committed to

18

the sound discretion of a trial court." *Alexander*, supra, 295 Ga. at 159 (2) (c). Here, the trial court engaged in no analysis of whether Smith asserted his speedy trial right in due course, the circumstances that possibly mitigated his late assertion, and failed to specify the weight of this factor.

(d) *Prejudice to the Defendant*. The remaining factor in the *Barker* analysis is prejudice to the defendant.

> The types of prejudice associated with an unreasonable delay before trial include oppressive pretrial incarceration, anxiety and concern of the accused, and the possibility that the accused's defense will be impaired by dimming memories and loss of exculpatory evidence. Of these forms of prejudice, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. A defendant need not show demonstrable prejudice to prevail on a speedy trial claim. Because of the difficulty of proving specific prejudice due to the passage of time, the United States Supreme Court has explained [that] excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify. While such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria, it is part of the mix of relevant facts, and its importance increases with the length of delay.

(Citations and punctuation omitted.) *Pickett*, supra, 288 Ga. at 677 (2) (c) (4).

19

(i) In this case, Smith correctly asserts that the trial court erred by failing to take into account the presumption of prejudice arising from the five-year delay in this case when considering this phase of the balancing test. While the trial court made findings with regard to the other three types of prejudice, it was also required to consider the presumed prejudice a second time in this portion of the *Barker* analysis. See *Wilkie v. State*, 290 Ga. 450, 451 (721 SE2d 830) (2012); *Layman v. State*, 284 Ga. 83, 84-85 (663 SE2d 169) (2008). But in cases "where the defendant has made no attempt at all to demonstrate (or even argue) that he has suffered any particular prejudice to his mental or physical condition or to his defense strategy, any prejudice that might be presumed by virtue only of the passage of time will carry very little weight in the *Barker* analysis.[Cits.]" *Phan*, supra, 290 Ga. at 596 (1) (d). But it is nonetheless also true that "the greater the delay between charging and trial, the greater presumed impairment of witness recollections and other evidence needed for a fair and reliable trial. [Cit.]" *State v. Porter*, 288 Ga. 524, 531 (2) (c) (4) (705 SE2d 636) (2011).

(ii) Smith also claims that the trial court abused its discretion by failing to weigh the prejudice portion of the balancing test against the State because he demonstrated "tangible prejudice through the deprivation of evidence that the State

20

admitted to destroying because 'the city only keeps them so long.'"[13] The record shows that while the State produced in discovery the incident report for Smith's arrest, it did not provide the accident report for the collision in which Smith was involved, computer automated dispatch reports (CAD reports), 911 tapes, or the names and addresses of witnesses, including the other driver involved in the accident and EMT personnel that informed the officer dispatched to the scene of the accident that "they believed he was intoxicated." The record shows that the State acknowledged destruction of only the CAD reports, and Smith's counsel stated in the hearing that the State has "indicated there is no accident report that's still available to us, for what reason I do not know, your Honor. I'm not sure if it never existed or whether it's been destroyed."

According to Smith, the missing evidence "was essential to establishing a time line of events and [his] appearance and demeanor . . . while on the scene" and also "essential to establishing [his] critical defense theory that an individual other than himself was driving the white Cadillac which he was accused of driving."

_____

[13] Smith does not contest the trial court's finding that he did not suffer oppressive pretrial incarceration or undue anxiety and concern.

In his previous appeal to this Court, Smith raised these evidentiary issues in the context of a claim that the State failed to present sufficient evidence to support his conviction, and we concluded:

> Smith first argues that the evidence failed to show that he was the driver. But the first responding officer testified that "[p]aramedics came out. They checked out the driver," and the officer smelled an odor of alcohol on "the driver," whom he identified as Smith at trial. The record does not disclose whether this description was hearsay from the paramedics or from Smith himself, nor did Smith object on that ground, so Smith has not demonstrated that this characterization of him as the driver was inadmissible. Furthermore, Teague testified that Smith volunteered to him that he was not at fault for the traffic accident because someone else had hit or sideswiped him. Smith also discussed with the officer the fact that even if he was not at fault he could be considered an impaired driver. Based on the record before us, we conclude that evidence authorized the trial court to find that no reasonable hypothesis existed other than he was the driver of the car.
>
> Next, with respect to whether Smith was shown to have an unlawful blood alcohol concentration within three hours of driving, Teague testified on direct that the test was done within three hours of Smith's driving. He further explained that this was based on the interval between the computer-recorded time that he was dispatched to the scene (10:45 p.m.) upon request by the initial investigating officer and the time recorded on the Intoxilyzer test (11:44 p.m.). Further, there was

22

evidence that paramedic first responders were still treating Smith while the initial responding officer was on the scene, and that the initial officer smelled alcohol on Smith at that time, so this supports a finding that the accident scene was still "fresh" at the time Teague was dispatched, which preceded the Intoxilyzer test by only one hour. Finally, there was no evidence that Smith consumed alcohol after driving, so Smith's test result, 0.126, following these events suggests that his blood alcohol concentration would have been even higher closer in time to his driving. Accordingly, the evidence authorized the trial court to find that the only reasonable hypothesis was that Smith's blood alcohol concentration was above the statutory 0.08 threshold within three hours after he drove.

(Footnotes omitted.) *Smith I*, supra, 325 Ga. App. at 407 (1).

In its order denying Smith's motion for discharge and acquittal, the trial court concluded "that the Defendant's ability to defend the charges has not been impaired by the delay." We agree with the State's contention on appeal that the record before us contains some evidence supporting this factual finding by the trial court. A video from a dashboard camera on the arresting officer's patrol vehicle depicting Smith's appearance and demeanor was played at trial. With regard to the missing evidence, it is speculative as to whether it would have been favorable to the defense, and its absence allowed the defense to argue that the State had failed to meet its burden of proof. See *Stewart*, supra, 310 Ga. App. at 559-560 (2) (d) (iii).

23

(d) *Balancing of Factors*. In recent years, the Supreme Court has emphasized "that it is not the job of an appellate court to weigh the *Barker* factors in the first instance, and so, when a trial court has abused its discretion in its consideration of these factors, we generally remand the case for the trial court to exercise its discretion again." (Citations and punctuation omitted.) *Johnson*, supra, 291 Ga. at 868 (3). See also *York v. State*, 334 Ga. App. 581, 586-88 (2) (780 SE2d 352) (2015). "But, of course, a remand is not *always* required when the trial court has erred in its consideration of the factors. After all, in some cases, reasonable minds could not disagree about whether the right to a speedy trial has been denied, and in those cases, a remand would serve no purpose." (Citation and punctuation omitted; emphasis in original.) Id.

We may only do this, however, when the trial court has actually considered and weighed all of the *Barker* factors. "The Supreme Court of Georgia has made clear that [the] trial court must *consider and weigh* all four factors under the circumstances of each case." (Citation and punctuation omitted; emphasis in original.) *Culbreath v. State*, 328 Ga. App. 153, 162 (4) (c) (761 SE2d 557) (2014). If the trial court fails to do so, a remand is still required. See id.; *Porter*, supra, 288 Ga. at 533-534 (2) (e) (reversing Court of Appeals for failing to vacate trial court's order and remand for

24

trial court to exercise its discretion). The rationale for this rule is that "[a] trial court exercises substantial discretion in applying the *Barker* balancing test, and its ultimate judgment is reviewed on appeal only for abuse of that discretion." *Porter*, 288 Ga. at 533 (2) (e). This Court is prohibited from weighing the factors in the first instance. Id. at 527 (2) (c) (2).

In this case, the trial court did not consider and weigh all of the factors, and we may not do so in the first instance. As outlined above, the trial court did not consider the length of the delay a second time when conducting its balancing test, it did not weigh the length of delay, and it did not assign any weight when it attributed the primary reason for the delay to the defendant's attempt to obtain the source code. We must therefore remand this case to the trial court to consider and weigh all four of the *Barker* factors. *Culbreath*, supra, 328 Ga. App. at 162 (3); *York*, supra, 334 Ga. App. at 588 (2) (c); *State v. Thompson*, 334 Ga. App. 692, 700-701 (5) (780 SE2d 67) (2015) (remanding speedy trial issue to trial court after mandating that the assertion of the right and prejudice factors be weighed heavily against the defendant on remand, stating "we cannot say that the delay in bringing the case to trial was entirely attributable to [the defendant] as a matter of law").

Accordingly, this is not a case in which it is appropriate for us to conclude that a remand is not necessary based upon an abuse of discretion by the trial court "*in its consideration of the factors*" because reasonable minds could not disagree about whether the right to a speedy trial has been denied. (Emphasis supplied.) *Johnson*, supra, 291 Ga. at 868 (3). And even if we could reach this issue, we cannot find that the trial court would have had *no* discretion to do anything but deny the motion to dismiss in this case after properly considering and weighing the four *Barker* factors. The length of the delay in this case was over five years, and a delay of one year is presumptively prejudicial. The reason for the delay does not necessarily rest primarily with the defendant in light of the State's 15-month delay between arrest and accusation and subsequent 6-month delay in responding to discovery, compounded by the trial court's 3-year delay in ruling on Smith's request for a finding of materiality and relevance for the source code, and the lack of any evidence showing that the defense counsel's leave of absence requests actually delayed the trial. Additionally, the filing of motions or seeking of discovery does not automatically mean that any associated delay should be attributed to the defendant and weighed heavily against him. With regard to the assertion of the right, a defendant does not have to demand a speedy trial at the first opportunity, but rather in due course, and

26

a late assertion may be mitigated by a defendant's insistence upon a right to discovery, an early lack of counsel, or a demonstrated willingness to proceed on previous trial calendars. And finally, while the evidence supports a finding of no actual prejudice, presumed prejudice from the five-year delay should be taken into account in the balancing test. In short, this is a case involving a complicated procedural history with gaps of information in the record presently before us making it difficult for reasonable minds to agree that there could be but one outcome following remand. See *State v. Alexander*, 295 Ga. 154 (758 SE2d 289) (2014) (affirming trial court's exercise of discretion to grant motion for acquittal based upon violation of speedy trial right even though delay caused only presumptive prejudice and late assertion of right on day of trial); *Johnson*, supra, 291 Ga. at 868 (3) (remanding case to trial court where delay in assertion of right could be mitigated and only presumptive prejudice, because could not say that trial court must always find no denial of speedy trial right under such circumstances); *Cawley*, supra, 330 Ga. App. at 28-29 (3).

2. Smith's remaining enumeration of error is rendered moot by our holding in Division 1.

*Judgment vacated and case remanded with direction. Barnes, P. J., concurs.*

*Rickman, J., concurs fully and specially.*

A16A0519.  SMITH v. THE STATE

RICKMAN, Judge, *concurring fully and specially*.

The record in this matter reveals leave requests totaling 231 days, years of litigation in the Kentucky trial and appellate courts, no assertion of a statutory right, the assertion of a constitutional right for the first time on the date of trial, and the seeking of a continuance immediately thereafter. If ever there were a case where a remand seemingly would not be required, this is it.

Nevertheless, I agree with the majority that precedent from our Supreme Court requires a remand.  I write only to note that it would be much "speedier,"  and much less frustrating to the trial courts, if the law authorized us to make a determination as to whether the trial court's ultimate conclusion is supported by the appellate record, regardless of mistakes made in the *Barker* analysis.  As it stands, we must remand cases such as this one until such time as the trial court successfully follows a formulaic incantation of the *Barker* factors.