**FIRST DIVISION
BARNES, P. J.,
GOBEIL and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. Please refer to the Supreme Court of Georgia Judicial Emergency Order of March 14, 2020 for further information at (https://www.gaappeals.us/rules).**

**June 8, 2020**

# In the Court of Appeals of Georgia

A20A0356. DURHAM v. THE STATE.

GOBEIL, Judge.

In February 2016, a Walton County jury found Gary Durham guilty of rape and child molestation. Before Durham's trial, the trial court orally denied Durham's plea in bar asserting a violation of his right to a speedy trial. We have twice remanded this case to the trial court, first in *Durham v. State*, 345 Ga. App. 687 (814 SE2d 813) (2018) ("*Durham I*") and second in *Durham v. State*, 350 Ga. App. 859 (830 SE2d 359) (2019) ("*Durham II*"), based on insufficient findings of fact by the trial court in denying Durham's plea in bar. Durham now appeals from the trial court's newest written order denying his plea in bar, and his judgment of conviction, asserting that the trial court: (1) erroneously denied the plea in bar; and (2) improperly commented

on the evidence at trial and failed to grant his motion for mistrial. For reasons explained more fully below, we affirm.

1. Turning to Durham's claim that his speedy trial rights were violated, both the Sixth Amendment to the United States Constitution and the Georgia Constitution provide criminal defendants with the right to a speedy trial. *Smith v. State*, 338 Ga. App. 62, 68 (1) (789 SE2d 291) (2016). The relevant portions of the record show that on December 9, 2009, Durham was arrested on warrants charging him with rape and child molestation alleged to have occurred between September 2004 and June 2007. He was granted bond shortly thereafter, with conditions that he have no contact with the victims or their families, he have no unsupervised contact with children, and he be subject to electronic GPS monitoring with an 8:00 p.m. curfew. Durham was not indicted until April 2012.

At a status hearing in December 2012, Durham announced that he was ready for trial, and the case was placed on the trial calendar. The case was on the jury trial calendar at least five times over the next three years before it was set for another motions/status hearing on January 28, 2016. At this hearing, the trial court inquired why it had taken the State more than six years to bring Durham to trial. The prosecutor stated that he was unsure of the reason for the delay, but he expected the

2

case to be ready for the next trial calendar. The trial court directed Durham to file a speedy trial motion, and that same day Durham filed his plea in bar asserting a violation of his constitutional right to a speedy trial.

On the morning that the trial was set to begin, the trial court orally denied Durham's plea in bar. The jury found Durham guilty of rape and child molestation. In his first appeal, we vacated the trial court's judgment and remanded the case with instructions for the trial court to "enter a proper order, including findings of fact and conclusions of law, as to the merits of Durham's constitutional speedy trial plea in bar." *Durham I*, 345 Ga. App. at 689 (1).[1]

On remand, the trial court issued a written order reiterating its ruling denying Durham's plea in bar (the "first order"). Durham again appealed, and we again vacated the trial court's judgment and remanded the case with instructions for the trial court to make additional findings of fact and "to correctly apply the pertinent legal

---

[1] Durham also enumerated as error the trial court's failure to grant his motion for mistrial after the trial court allegedly improperly commented on the evidence, but we did not address that issue at that time. *Durham I*, 345 Ga. App. at 689 (2).

principles and to consider again whether Durham was denied his right to a speedy trial." *Durham II*, 350 Ga. App. at 862 (1) (e) (citation and punctuation omitted).[2]

On second remand, the trial court issued a second written order addressing deficiencies pointed out in *Durham II* (the"second order"). This appeal followed. On appeal, Durham asserts that the trial court misapplied the four-factor test laid out in *Barker v. Wingo*, 407 U. S. 514 (92 SCt 2182, 33 LE2d 101) (1972), and his conviction must be reversed based on the violation of his constitutional right to a speedy trial.

When analyzing speedy trial claims, we "first determine whether the interval from the accused's arrest, indictment, or other formal accusation to the trial is sufficiently long to be considered presumptively prejudicial." *Smith*, 338 Ga. App. at 68 (1) (citation and punctuation omitted). In this case, the delay from the date of arrest until Durham's trial was over six years, and this court already determined that "the trial court properly concluded that it was presumptively prejudicial." *Durham II*, 350 Ga. App. at 859 (1).

---

[2] Durham again enumerated as error the trial court's failure to grant his motion for mistrial, but we again did not address that issue. *Durham II*, 350 Ga. App. at 862 (2).

In cases where the delay is presumptively prejudicial, the trial court is required to conduct a balancing test of the following four factors:

> (1) the length of the delay; (2) reasons for the delay; (3) defendant's assertion of the right to speedy trial; and (4) the prejudice to the defendant. Standing alone, none of these factors are a necessary, or sufficient condition to a finding of deprivation of the right to a speedy trial, but rather should be considered as part of a balancing test.

*Smith*, 338 Ga. App. at 68 (1) (citation and punctuation omitted). "[T]hese four factors have no talismanic qualities and must be considered together with such other circumstances as may be relevant in light of the animating principles of the speedy trial guarantee." *Ellis v. State*, 343 Ga. App. 391, 394 (2) (806 SE2d 839) (2017) (citation and punctuation omitted).

> In Georgia, the application of these principles to the circumstances of a particular case is a task committed principally to the discretion of the trial courts, and it is settled law that our role as a court of review is a limited one. Therefore, we must accept the factual findings of the trial court unless they are clearly erroneous, and we must accept the ultimate conclusion of the trial court unless it amounts to an abuse of discretion, even though we might have reached a different conclusion were the issue committed to our discretion.

*Smith*, 338 Ga. App. at 68-69 (1) (citation and punctuation omitted). We now address the four factors.

(a) *Length of Delay*. Durham was arrested in December 2009 for crimes committed between September 2004 and June 2007. He was not indicted until April 2012 and was not tried until February 2016. In its first order, the trial court weighed the delay against the State, but failed to "assign a weight for the delay or decide whether the particular delay in this case was uncommonly long," despite the fact that the State had conceded as much. *Durham II*, 350 Ga. App. at 860 (1) (a) (punctuation omitted). In its second order, the trial court concluded that the delay in Durham's case was uncommonly long, but not exceedingly so, noting that numerous cases with older case numbers were tried in the trial court after Durham announced that he was ready for trial. Additionally, the trial court found that Durham's case had some complexity, but was not "overly complex." Accordingly, the trial court weighed the first factor "moderately against the State."

As the trial court recognized, "the length of delay that can be tolerated in a particular case depends to some extent on the complexity and seriousness of the charges in that case." *Taylor v. State*, 338 Ga. App. 804, 807 (1) (a) (792 SE2d 101) (2016) (citation and punctuation omitted). "And there is no bright-line rule that all

6

uncommonly long delays must be weighed heavily against the State." Id. As the evidence in this case involved two victims, with multiple incidents of sexual assault that occurred over a period of months, the trial court's finding that the case had some complexity warranting a delay, but not enough to absolve the State of responsibility for the six-year delay, was supported by the record. Additionally, the trial court's finding that the State was trying cases older than Durham's in the intervening years also supports its finding that the delay, while uncommonly long, was not exceedingly so. Accordingly, we conclude that there was no abuse of discretion in the trial court's weighing the length of the delay moderately against the State.

(b) *Reasons and Responsibility for the Delay.* In its first written order, the trial court found, as the State had conceded, that "much of the reason for the delay is due to negligence on its part in bringing the case to trial. Further, staffing turnover within the District Attorney's Office and overcrowded dockets . . . also contributed to the delay. However, there is no evidence of any deliberate attempt to delay the trial of [Durham]." Therefore, the trial court weighed this factor "benignly against the State." In *Durham II*, 350 Ga. App. at 860 (1) (b), we found no abuse of discretion with the trial court's findings with regard to this factor. In the second order, the trial court

7

incorporated its prior findings on this factor from the first order, and we again find no abuse of discretion.

(c) *Defendant's Assertion of his Speedy Trial Right*. In its first order, the trial court weighed this factor "heavily against [Durham]" based upon his failure to assert the right for more than six years and the fact that he did not do so until the court itself raised the speedy trial issue. In *Durham II*, 350 Ga. App. 860-861 (1) (c), we held that the trial court failed "to consider whether Durham's delayed assertion of his right should be mitigated by announcements he was ready for trial," and such consideration was within the discretion of the trial court, so we would not consider it in the first instance.

"[A]nnouncements that a defendant is ready for trial" can mitigate the weight of a late assertion of the speedy trial right. *Smith*, 338 Ga. App. at 71 (1) (c) (citation omitted). In its second written order, the trial court first considered Durham's announcement of ready for trial at his initial status conference in December 2012. The court distinguished this status conference from a calendar call, and found that it was common for defendants pleading not guilty to announce "ready for trial" at that stage, and it was not an assertion of Durham's right to a speedy trial. Next, the court found that "merely being present" at multiple trial calendar calls was "not equivalent to

8

announcing ready for trial." The court found that the record did not establish, and Durham did not cite to anything in the record, that Durham actually announced ready for trial at any of the these trial dates. Accordingly, the court found that "[b]eing present at a trial calendar with the hope that his case would not be reached does not entitle [Durham] to any level of mitigation."

Additionally, the court stressed that Durham did not assert his right to a speedy trial until after being ordered to file a plea in bar by the trial court, and his "last minute assertion showed no urgency or vigor." Thus, the court found that Durham's "claim of now wanting a speedy trial is disingenuous[,]" and his right was not asserted in due course. These findings led the court to the conclusion that Durham was not entitled to mitigation on this factor. The court also concluded that any potential mitigation from Durham's possible, but unproven, announcements of ready for trial at multiple calendar calls was "overwhelmed by the other facts and circumstances." Thus this factor still weighed heavily against Durham.

"[W]hether the circumstances of a particular case warrant any mitigation is a question committed to the sound discretion of the trial court." *State v. Buckner*, 292 Ga. 390, 397 (1) (c) (738 SE2d 65) (2013). Here, the record shows that Durham did not demand a speedy trial at any of at least five different appearances before the trial

9

court, and not until after being directed to do so by the court itself mere weeks before the trial was set to begin. Additionally, the trial court made specific findings of fact concerning the customs of criminal cases in its jurisdiction which are relevant to whether Durham was due mitigation. Under these facts, we conclude the trial court was authorized to find that Durham's failure to assert his speedy trial right should not be mitigated by his presence at calendar calls. See *Ruffin v. State*, 284 Ga. 52, 63 (2) (b) (iii) (663 SE2d 189) (2008) (timing, form, and vigor of defendant's trial demands are relevant to trial court's inquiry into this factor). Accordingly, the trial court's finding that this factor weighed heavily against Durham was not an abuse of discretion. *Buckner*, 292 Ga. at 397 (3) (c) ("[B]ecause delay often works to the defendant's advantage, the failure of the accused to assert his right in due course generally is accorded strong evidentiary weight.") (citation and punctuation omitted).

(d) *Prejudice to the Defendant*. In its first order, the trial court weighed this factor heavily against Durham, finding that he was not in custody during the delay, he failed to present any evidence showing actual prejudice to his defense, and nothing in the record showed unusual anxiety on his part. In *Durham II*, 350 Ga. App. at 861 (1) (d), we held that the trial court failed "to take into account the presumption of prejudice when it weighed this factor," and thus the trial court abused its discretion.

10

In its second order, the trial court found that any presumed prejudice to the defense from the delay was "not sufficient to overcome the lack of any actual prejudice in this case[,]" explaining that the primary evidence against Durham was the testimony of the victims, who had memorialized their accounts of the sexual assault incidents in recorded interviews with police that were available to Durham throughout the delay. Thus, any prejudice from the delay was minimized because the victims would be subject to cross-examination based on their statements to police. Thus the trial court found that the prejudice factor weighed "slightly against [Durham]."

"The types of prejudice associated with an unreasonable delay before trial include oppressive pretrial incarceration, anxiety and concern of the accused, and the possibility that the accused's defense will be impaired by dimming memories and loss of exculpatory evidence." *Smith*, 338 Ga. App. at 72 (1) (d) (citation and punctuation omitted).

> A defendant need not show demonstrable prejudice to prevail on a speedy trial claim. Because of the difficulty of proving specific prejudice due to the passage of time, the United States Supreme Court has explained that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify. While such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria, it

11

is part of the mix of relevant facts, and its importance increases with the length of delay.

Id. (citation and punctuation omitted). However, in this case, the trial court was authorized to find that any presumed prejudice was outweighed by the lack of evidence of any specific prejudice. See id. at 71 (1) (d) (i) ("[I]n cases where the defendant has made no attempt at all to demonstrate (or even argue) that he has suffered any particular prejudice to his mental or physical condition or to his defense strategy, any prejudice that might be presumed by virtue only of the passage of time will carry very little weight in the *Barker* analysis.") (citation and punctuation omitted).

Durham asserts only "inherent prejudice which accompanies any long delay." He does not point to any actual or specific prejudice to his defense, arguing only that the length of the delay "teeter[s] on the possibility of impairing the defense." See *Higgins v. State*, 308 Ga. App. 257, 263 (2) (d) (707 SE2d 523) (2011) ("To demonstrate an impaired defense, a defendant must present more than vague or conclusory statements; he must offer specific evidence.") (citation and punctuation omitted). He also points to the expense to maintain his electronic monitoring, but he cites no authority to support his argument that such expense is enough to show

12

prejudice for purposes of a speedy trial violation. Accordingly, we conclude that the trial court did not abuse its discretion in weighing this factor against Durham, especially as it did so only slightly.

(e) *Balancing of Factors*. In its first order, the trial court weighed the factors and exercised its discretion to conclude that Durham was not denied his constitutional right to a speedy trial. In *Durham II*, 350 Ga. App. at 861-862 (1) (e), because we had determined that the trial court had abused its discretion with respect to three of the four factors, we were required to remand so that the trial court could again exercise its discretion. In its second order, the trial court again weighed the factors and exercised its discretion to conclude that Durham was not denied his constitutional right to a speedy trial. Specifically, the trial court found that the third factor – Durham's failure to assert his right to a speedy trial – carried the analysis in this case. The court could not "think of a more egregious failure in asserting the right to a speedy trial."

While we recognize that the delay in this case was substantial, we conclude that the trial court's balancing of the factors was not an abuse of discretion. See *State v. Porter*, 288 Ga. 524, 533 (2) (e) (705 SE2d 636) (2011) ("A trial court exercises substantial discretion in applying the *Barker* balancing test, and its ultimate judgment

13

is reviewed on appeal only for abuse of that discretion."). Here, the record authorizes the trial court's findings that (a) the delay was uncommonly long, but not exceedingly slow for its particular jurisdiction; (b) the reasons for the delay were benign; (c) Durham did not assert his right to a speedy trial in due course, but instead waited more than fours years and did not assert the right until after being ordered to do so by the court mere weeks before the trial; and (d) Durham did not show any particularized prejudice and the circumstances of the case outweighed any presumed prejudice. While two of these factors weighed against each party, the most heavily weighted factor – Durham's failure to assert the right in due course – weighed against him. Under these circumstances, we cannot say that the trial court abused its discretion. See id. at 532 (2) (d) (when factors do not all point in one direction, "under the circumstances of a particular case, any one factor may be weighty enough to tip the balance"). Accordingly, we affirm the trial court's denial of Durham's plea in bar.

2. Durham also contends that, during the trial, the trial judge improperly commented on the evidence and failed to grant Durham's motion for mistrial. Specifically, Durham points to a moment when his defense attorney was cross-examining one of the victims, S. B.

14

During her direct examination, S. B. testified that she was placed in foster care when she was 16 years old, and Durham became her foster father. S. B. testified that one day after school, Durham woke her up from a nap and told her to take her clothes off. She told Durham that she "didn't want to" and he responded that he was not going to ask her again. Durham then pushed her onto the bed, performed oral sex on her, and then raped her. S. B. told him to stop, but he did not. Durham sexually assaulted her on multiple occasions after that incident.

S. B. testified that she did not report the sexual assault until after she had run away from Durham's home and gone back into DFCS custody. She had wanted to tell her DFCS case worker in the past, but Durham was always present when they met. After she officially reported the sexual assault, she spoke to someone at a children's hospital about the assault, but she was nervous and did not report every minor detail. A couple of years later, she spoke to law enforcement and the district attorney's office about the incidents.

On cross-examination, Durham's defense attorney produced what he asserted was a transcript of S. B.'s statement made at the children's hospital. S. B. agreed that it appeared to be accurate, but she had not seen the transcript before. Defense counsel then stated that, back when she gave her statement at the children's hospital, one of

15

the investigators asked her "how was [] Durham supposed to know that you did not want to have sex?" S. B. first responded that Durham was supposed to take care of her, not have sex with her. Defense counsel repeated the question: "And [the investigator] asked you how is [Durham] supposed to know[?] [A]nd your reply was I didn't want to do it; is that correct?" S. B. responded that she told Durham to stop.

In an effort to impeach S. B. with her prior statement to the investigator, defense counsel asked S. B. to look at the transcript of her response to the investigator's question. At that point, the prosecutor objected, stating that S. B. had already said that she had not seen the transcript before, and could not read from it. The trial court asked defense counsel to explain what part of the interview he was referring to, and after defense counsel specified, the following exchange occurred:

> The Court: How many times have they already asked her in this thing about whether she told him no, she didn't want to have sex?
>
> [Defense Counsel]: I don't recall, your Honor.
>
> The Court: You don't? Go back and look at it. Look on page five, page nine – excuse me, page five, line[s] nine and ten. Next page, page six, lines 20 to 22. Refer to that. What did she say both times when she is asked by the worker?

[Defense Counsel]: Could I take up a matter outside the presence –

The Court: No, sir. Yeah, let me excuse [the jury] back in the back room for a second.

At that point, the jury left the courtroom, and the trial court continued to admonish defense counsel for asking what it believed to be a question that could mislead the witness or the jury.[3] Defense counsel then moved for a mistrial, arguing that the court had improperly commented on the evidence. The trial court denied the motion, the jury was brought back in, and the trial continued. Defense counsel did not ask S. B. any more questions about her interview with investigators. However, the interview that was the subject of defense counsel's questions was eventually played in full for the jury.

---

[3] Defense counsel's question was in fact a misstatement of the interview. Defense counsel phrased the investigator's question to S. B. to ask how Durham could have known that she did not consent. The investigator's actual question was: "So if [Durham] said you wanted to do this, how can we make sure that you didn't want to?" During the interview, S. B.'s response to this question was that she "didn't want to do it."

Further, the trial court was correct that the investigator already had asked S. B. previously in the same interview if she consented to the sex with Durham, and S. B. had replied that she did not. S. B. had also explicitly already stated in the interview that Durham knew that she did not want to have sex with him, as she had told him no.

17

Durham raised this issue in his motion for new trial, which the trial court denied. On this issue, the trial court determined that the court's comments did not remark upon the evidence of the case, but were merely controlling cross-examination as it has the authority to do. On appeal, Durham argues that the trial court's interjection directly commented on the force/lack of consent elements of the charge of rape. He also argues that the court improperly bolstered the credibility of S. B. as a witness. We find no reversible error.

We review the denial of a motion for mistrial under an abuse of discretion standard. See *Fernandez v. State*, 263 Ga. App. 750, 753 (3) (589 SE2d 309) (2003). "It is error for any judge, during any phase of any criminal case, to express or intimate to the jury the judge's opinion as to whether a fact at issue has or has not been proved or as to the guilt of the accused." OCGA § 17-8-57 (a) (1). "To constitute an improper comment under OCGA § 17-8-57, the trial court's statement must express an opinion about whether the evidence had proven a material issue in the case, whether a witness was credible, or whether the defendant was guilty." *Anthony v. State*, 282 Ga. App. 457, 458 (1) (638 SE2d 877) (2006) (citation and punctuation omitted).

Here, we conclude that the trial court was admonishing defense counsel to correct what it believed to be a misleading question to the victim, which "does not

18

rise to the level of an expression or intimation of opinion by the judge as to matters proved or guilt of the accused." *Owens v. State*, 271 Ga. App. 365, 371 (5) (c) (i) (609 SE2d 670) (2005) (citation and punctuation omitted) (trial court did not comment on the evidence or credibility of a witness when it commented to the defense attorney: "Now, [defense counsel], that's not the question you asked him. . . . It's all right to ask [the witness] a question and get an answer, but it is not all right to misstate what you asked him."). The trial court did not express its belief that Durham's sex with the victim was in fact without her consent or that S. B. was telling the truth on the stand, but rather it was preventing defense counsel from misrepresenting the victim's prior statement to the investigator. As explained above, defense counsel had just misstated the language from the victim's interview, and was about to misrepresent the context of her answer to the investigator. Thus the trial court was acting within its authority to "develop the truth of a case[.]" *Bradley v. State*, 342 Ga. App. 486, 490 (2) (804 SE2d 144) (2017) (citation and punctuation omitted); see also *Thompson v. State*, 349 Ga. App. 1, 6 (2) (a) (825 SE2d 413) (2019)("It is the duty of the trial court to control the trial of the case and to ensure a fair trial to both sides on the disputed issues in the case. Sometimes this requires interference by the court with the conduct of counsel.")

(citation and punctuation omitted). We discern no reversible error on this issue and affirm.

*Judgment affirmed. Barnes, P. J., and Pipkin, J., concur.*