**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BRANCH and BETHEL, JJ.**

**NOTICE:** Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**October 26, 2017**

# In the Court of Appeals of Georgia

A17A0659. ELLIS v. THE STATE.

MCFADDEN, Presiding Judge.

William Ellis appeals from the trial court's denial of his plea in bar asserted on constitutional speedy trial grounds. Because the trial court erred in key factual findings and failed to balance the relevant legal factors, the trial court's judgment is vacated and the case is remanded for the trial court to exercise its discretion based on the correct facts and law.

1. *Facts and procedural posture.*

Ellis was arrested on February 15, 2013, and on April 26, 2013, he was indicted for rape, aggravated sodomy, false imprisonment, kidnapping, and battery. Ellis remained incarcerated due to a parole violation. On June 6, 2013, attorney Brian McWhorter filed an entry of appearance on behalf of Ellis, a waiver of arraignment

and not guilty pleas to all charges, a motion for discovery, and a notice of the defendant's election to engage in reciprocal discovery with the state.

The case first appeared on a trial calendar for November 1, 2013, but it was then continued until the trial calendar beginning on January 6, 2014. On January 13, 2014, Ellis moved for a continuance on the ground that he had just received certain discovery from the state on or about January 8, 10, and 13. The trial court granted the motion and set a new trial date of March 10, 2014. The trial court subsequently continued the case to another trial date of May 2, 2014, and then continued the trial again until September 5, 2014.

On June 27, 2014, the state indicted Ellis on a charge of influencing a witness in the instant case. McWhorter entered an appearance in that case as well, and on August 11, 2014, the state moved to join that influencing case with the instant case. On September 5, 2014, rather than holding the scheduled trial in this case, the trial court held a hearing on the state's motion to join the two cases. At that hearing, the state noted that joinder would create a potential conflict for defense counsel McWhorter because some of the witnesses in the influencing case were his former clients. Defense counsel objected to the joinder, stating that the rape case had already been continued several times, that if the cases were joined then he would be unable

to continue representing Ellis due to the client conflicts, and that Ellis would then have to start over with a new attorney. At the end of the hearing, the trial court announced that it was granting the state's motion for joinder and told defense counsel, "Now we have the issue of a conflict. So, if you wish to be conflicted out, you know, just let me know, and we'll have to continue the case in order for Mr. Ellis to obtain other counsel." Three days after the hearing, on September 9, 2014, the trial court entered a written order granting the state's motion for joinder of the cases.

The court placed the instant case on the trial calendar for October 31, 2014. Thereafter, McWhorter filed a motion to withdraw as counsel. On November 21, 2014, the trial court entered an order granting the motion and dismissing McWhorter from the case. On December 1, 2014, Ellis filed a pro se objection to McWhorter's withdrawal. In his objection, Ellis asserted, among other things, that the case had already been continued from five trial calendars; that "if counsel is removed . . . . or permitted to withdraw[, Ellis] will be unable to proceed to [a] jury trial[,] which could violate his right to a speedy trial"; and that the withdrawal violated "his rights guaranteed by the 5th, 6th, and 14th Amendments to the U. S. Constitution and concomitant provisions of the Georgia Constitution."

The trial court scheduled a hearing on Ellis' objection to counsel's withdrawal on December 17, 2014. At the hearing, the prosecutor indicated that she was not ready and the judge responded that he would continue the hearing if she was not prepared. McWhorter reiterated that he had argued vehemently against joinder of the influencing a witness case with the instant rape case because of the potential conflict. The judge then continued the hearing to a later date. The following day, December 18, 2014, the trial court vacated its November 21 order allowing McWhorter's withdrawal, and set a hearing on McWhorter's motion to withdraw for January 28, 2015.

At the January 28 hearing, the state argued that the trial court should allow McWhorter to withdraw. The prosecutor also added that "there may be further charges against Mr. Ellis down the pipeline that would even further this potential conflict." McWhorter told the court that when they appeared on the trial "calendar before the last [one]," the state asked for, and was granted, a continuance to bring additional charges against Ellis. McWhorter reiterated that he had strongly objected to the state's motion to join the cases because he was ready on the instant case, he wanted to proceed with it, and he did not want to be forced to withdraw due to a

potential conflict. The trial court continued the matter to another hearing on February 2, 2015.

During that February 2 hearing, the trial court opined, "We joined these cases for trial. Would this – these issues be existing if the cases had not been joined? At one point you indicated that's the reason we face these issues, but I'm not – I'm not convinced of that, but what if I – these cases weren't joined and we just tried the rape case alone?" McWhorter responded that "that's what I had proposed early on." The trial court took the matter under advisement and on February 27, 2015, entered an order denying McWhorter's motion to withdraw.

On March 10, 2015, the state filed a motion to disqualify McWhorter. A month later, on April 10, 2015, the trial court held a hearing on the state's motion to disqualify counsel. Two weeks after that, on April 24, 2015, the trial court entered an order denying the state's motion to disqualify McWhorter.

On May 15, 2015, the state indicted Ellis on a second influencing case. On June 11, 2015, McWhorter and the state filed a joint motion requesting that the court continue the two joined cases – the instant case and the first influencing a witness case – from the July 6, 2015 trial calendar, and that the court specially set both cases for the first week of the September 2015 trial calendar. That same day, the trial court

5

entered an order that granted the joint motion to continue, but did not address the request for a specially set trial date. On July 1, 2015, the parties appeared in court "to talk about where [the case was] going from here procedurally." At that meeting, the state proposed that the court now sever the first influencing case from the instant case and that the two influencing cases be tried before the instant case. Both Ellis and his counsel consented to the state's proposal.

On August 7, 2015, Ellis filed a pro se plea in bar for a speedy trial violation in the instant case, claiming that two defense witnesses had died during the delay of the case. On August 10, 2015, the trial court denied the plea in bar on the ground that Ellis was represented by counsel and thus was not entitled to represent himself. Thereafter, the instant case appeared on trial calendars for January 4, 2016, and March 4, 2016, but no trial occurred on either date. In the meantime, the two influencing cases went to trial, with the first case resulting in a mistrial due to a hung jury on January 3, 2016, and the second influencing case resulting in a guilty verdict on March 15, 2016.

The instant case appeared on the court's trial calendar beginning May 6, 2016, and was called for trial on May 16, 2016. At the call of the case, Ellis sought to dismiss McWhorter and proceed pro se. The trial court granted the request, but

6

informed Ellis that he could later reinstate McWhorter if he wanted to do so. While representing himself, Ellis filed in court a plea in bar asserting a constitutional speedy trial violation. After filing the pro se plea in bar, Ellis sought to reinstate McWhorter, which the trial court initially allowed, but later disallowed and instructed Ellis to apply for a public defender.

A new attorney was subsequently appointed to represent Ellis and he entered his notice of appearance as counsel for Ellis on June 10, 2016. New counsel expressly adopted the pro se plea in bar previously filed by Ellis. A hearing was held on August 3, 2016, and the trial court denied the plea in bar on August 26, 2016. Ellis' application for interlocutory review was granted, and this appeal followed.

2. *Barker-Doggett framework.*

"Both the Sixth Amendment of the United States Constitution and the Georgia Constitution provide that a criminal defendant shall have the right to a speedy trial." *State v. Bonawitz*, 339 Ga. App. 299, 300 (1) (793 SE2d 191) (2016) (citations omitted).

> Constitutional speedy trial claims are evaluated under the two-part framework set out in *Barker v. Wingo*, 407 U.S. 514 (92 SCt. 2182, 33 LE2d 101) (1972), and refined in *Doggett v. United States*, 505 U.S. 647 (112 SCt. 2686, 120 LE2d 520) (1992). The first part requires the trial court to determine whether the time between the defendant's arrest or

7

indictment and his trial was long enough to be considered presumptively prejudicial to the defendant. If the presumptive prejudice threshold was crossed, the court proceeds to the second part of the framework, applying a context-focused, four-factor balancing test to determine whether the defendant was denied the right to a speedy trial. The four factors that the court must examine are: (1) the length of the delay; (2) the reasons for it; (3) the defendant's assertion of his right to a speedy trial; and (4) prejudice to the defendant. However, these four factors have no talismanic qualities and must be considered together with such other circumstances as may be relevant in light of the animating principles of the speedy trial guarantee.

The *Barker-Doggett* framework necessarily compels courts to approach speedy trial cases on an ad hoc basis, a task better suited to trial courts than appellate courts. We have explained that the trial court's discretion in applying this framework is substantial and broad. We will accept the court's findings of fact unless they are clearly erroneous, and we will defer to the court's ultimate conclusion unless it amounts to an abuse of discretion, even though we might have reached a different conclusion were the issue committed to our discretion.

*Johnson v. State*, 300 Ga. 252, 257-258 (3) (794 SE2d 60) (2016) (citations and punctuation omitted). "However, where the trial court has clearly erred in some of its findings of fact and/or has misapplied the law to some degree, the deference owed the trial court's ultimate ruling is diminished." *State v. Porter*, 288 Ga. 524, 526 (2) (a) (705 SE2d 636) (2011) (citation and punctuation omitted).

3. *Presumptive prejudice.*

8

"Speedy trial rights attach at the time of arrest or formal indictment, whichever is earlier." *Salahuddin v. State*, 277 Ga. 561, 562 (2) (592 SE2d 410) (2004) (citation omitted). Here, the relevant delay was the time that elapsed between Ellis' arrest on February 15, 2013, and the trial court's denial of his plea in bar on August 26, 2016. See *State v. Porter*, supra (where a trial has not occurred, the delay should be calculated from the date of arrest or other formal accusation to the date on which the speedy trial motion was granted or denied); *Stewart v. State*, 310 Ga. App. 551, 553 (1) (713 SE2d 708) (2011). The trial court correctly found that the three-and-a-half year delay in this case was presumptively prejudicial. See *State v. Buckner*, 292 Ga. 390, 393 (2) (738 SE2d 65) (2013) (delay approaching one year is sufficient in most cases to raise a presumption of prejudice).

4. *Four-factor balancing test.*

"When a delay raises a presumption of prejudice, and a more searching inquiry is warranted, a court must consider [the four factors of the *Barker-Doggett* balancing test]." *Buckner*, supra at 393 (3) (citations omitted).

(a) *Length of the delay.*

"The length of the pretrial delay in absolute terms plays a role in the threshold determination of presumptive prejudice. However, it also wears another hat as one of

9

the four interrelated criteria that must be weighed in the balance at the second stage of the *Barker-Doggett* analysis." *Ruffin v. State*, 284 Ga. 52, 56 (2) (b) (i) (663 SE2d 189) (2008). Whether the delay can be seen as uncommonly long "depends to some extent on the complexity and seriousness of the charges in that case." *Buckner*, supra at 393 (3) (a). After considering the seriousness of the sexual offense charges and the complexity of the additional issues in the case, the trial court found that the pretrial delay of more than three years was uncommonly long and that this factor must be weighed against the state. The trial court did not err in finding that the delay was uncommonly long or in weighing this factor against the state. See *Buckner,* supra; *Ruffin*, supra at 57 (2) (b) (i) (delay of almost 27 months found to be uncommonly long); *Bonawitz*, supra at 302 (3) (a) (two-and-a-half year delay was uncommonly long and weighed against the state).

(b) *Reasons for the delay.*

The trial court concluded that the delay in this case was equally caused by the state and the defense. Indeed, where both parties are to blame for the delay, this factor of the *Barker-Doggett* analysis remains neutral. See *Robinson v. State*, 287 Ga. 265, 268 (1) (b) (695 SE2d 201) (2010). However, in reaching its conclusion, the trial court made clearly erroneous findings of fact and failed to consider reasons for all of

10

the delays in the case. Thus, on remand, the trial court must consider all of the relevant facts in determining the reasons for the delay.

> This factor, which examines whether the defendant or the [s]tate bears more responsibility for the delay, is pivotal in evaluating the strength of a constitutional speedy trial claim, as it can color the consideration of all other factors. Deliberate delay intended to hinder the defense must be weighed heavily against the [s]tate, whereas delay occasioned by more neutral causes, such as negligence or overcrowded dockets, weighs less heavily against the [s]tate. On the other hand, delay caused by the defense weighs against the defendant.

*Phan v. State*, 290 Ga. 588, 593 (1) (b) (723 SE2d 876) (2012) (citations and punctuation omitted). "To evaluate the reasons for delay, the court assigns various degrees of weight to the different reasons provided by the prosecution and the defense respectively." *Layman v. State*, 284 Ga. 83, 85 (663 SE2d 169) (2008) (citation omitted).

As noted above, the speedy trial rights in this case attached at the time of arrest, which occurred before the formal indictment. See *Salahuddin,* supra. But "the trial court failed to consider the delay between the [arrest] in [February 2013] and the first call to trial in [November 2013.]" *York v. State*, 334 Ga. App. 581, 586 (2) (b) (ii) (780 SE2d 352) (2015) (noting that the trial court's *Barker-Doggett* analysis on this factor was incomplete where it failed to consider the delay between the return of the

11

indictment, when speedy trial rights attached in that case because it preceded the arrest, and the first call to trial). We note that where, as here, the record reveals no specific reason for such a delay, it must be attributed, "at least in part, to the [s]tate's negligence in moving the case forward." *Phan*, supra at 594 (1) (b) (citations omitted). Accord *York*, supra (finding no apparent reason for delay between indictment and first call to trial and that such delay must therefore be treated as having been caused by the negligence of the state); *Stewart*, supra at 554-555 (2) (b); *Hester v. State*, 268 Ga. App. 94, 97 (2) (601 SE2d 456) (2004) ("Where no reason appears for a delay, we must treat the delay as caused by the negligence of the [s]tate in bringing the case to trial. [Cit.]").

The trial court's first finding of fact in evaluating this factor was that "[i]nitially, neither party was prepared to try this case when it appeared on the first several trial calendars." However, there appears to be no evidence in the record supporting this finding. Although the record shows that the case was continued from the first trial calendar of November 2013, we have found no specific reasons for that continuance in the record and the court's order provides none.

With regard to the next trial date of January 2014, the record shows that Ellis moved for a continuance on the ground that the state had failed to timely provide

12

discovery. A delay on that basis could not be attributed to Ellis "since [he] can hardly be faulted for demanding that the [s]tate comply with its discovery obligations before trial [begins]." *Hester*, supra at 98 (2).

As recounted above and as set forth in the trial court's order, the case was then continued from trial calendars in March 2014 and May 2014. Again, the record and the trial court's order provide no specific reasons for these delays. In its order, the trial court referred to McWhorter's testimony at the plea in bar hearing that he thought "for the most part, when the case was going to be continued, there was an understanding between both parties that there was a reason for it to be continued, and everyone consented." While such testimony certainly has some relevance in considering who bears responsibility for the various delays, it nevertheless sheds no light on the specific reasons for any of the delays. Again we note that where no reasons appear, the delay is attributed to the negligence of the state in bringing the case to trial. *Phan*, supra at 594 (1) (b); *Hester*, supra at 97 (2).

The trial court next found that the case was delayed by the state's August 11, 2014 motion to join the first influencing a witness case with this case and "[t]hen in or around September 2014, [McWhorter] announced to the [c]ourt that he would be filing a Motion to Withdraw. He did not file that motion, however, until November

13

2014 and it was finally denied by the [c]ourt in February 2015." Thus, the trial court's order gives short shrift to the state's motion to join the cases and appears to place sole responsibility for the delay from September 2014 until February 2015 on the defense. However, as recounted above, the record shows that the case was set for trial on September 5, 2014, but instead of holding a trial on that date, the trial court held a hearing on the state's motion for joinder, which Ellis opposed; that defense counsel's subsequent motion to withdraw was necessitated by the trial court's joinder of the cases; that the state was unprepared for the first December 2014 hearing on the withdrawal of counsel, which was then continued; that at the next scheduled hearing the state argued that the court should order withdrawal of defense counsel from the case; and that at that hearing defense counsel reiterated that he had previously objected to the state's motion to join the cases because he was ready on the instant case and did not want to be forced to withdraw due to a potential conflict. Thus, "[t]o lay blame entirely on the defense for [the delay] under these circumstances would be manifestly unjust." *Phan*, supra at 593 (1) (b) (citation omitted).

The trial court subsequently cited the parties' joint motion for continuance filed in June 2015 and that "the parties agreed that this case would be held in abeyance until both of the [d]efendant's influencing cases were tried." The defense certainly

14

bears some responsibility for acquiescing in the state's proposal to try the influencing cases before the instant case. But it was still the state's decision to reverse course on its earlier motion to join the cases by requesting that the court now sever those previously-joined cases in order to allow the influencing cases to be tried first. "Suffice it to say that the [s]tate cannot rely on its delay in prosecuting one matter to defeat a constitutional speedy trial claim in another." *Ruffin*, supra at 58 (2) (b) (i).

The trial court next found that the "influencing cases were continued at the request of the [d]efendant's counsel in September and November of 2015." However, we have found no evidence in the record before us that supports this finding and the trial court's order does not cite any such evidence. Indeed, we note that while the parties and the trial court have referred to the influencing charges, the record before us does not appear to include the indictments, final judgments, or any other pertinent evidence as to precisely what those charges were or what occurred in those cases.

> The trial court did not [adequately] break down the overall pre-trial delay into relevant time periods and assign responsibility for delay to each time period. Nor did it conclude whether the delay should be weighed heavily, slightly, or neutrally against [each party]. Because of the procedural complexity of this case, the trial court could not have exercised its discretion properly under the [*Barker-Doggett*] test without doing so.

15

*Smith v. State*, 338 Ga. App. 62, 69-70 (1) (b) (789 SE2d 291) (2016) (citation and punctuation omitted). Accordingly, on remand the trial court should properly break down the entire pretrial delay into relevant time periods and consider all relevant factors in "assign[ing] various degrees of weight to the different reasons provided by the prosecution and the defense respectively." *Layman*, supra at 85 (citation omitted).

(c) *Defendant's assertion of his speedy trial right.*

"The relevant question for purposes of the third speedy trial factor is whether the accused has asserted the right to a speedy trial in due course. This factor requires a close examination of the procedural history of the case with particular attention to the timing, form, and vigor of the accused's demands to be tried immediately." *Phan*, supra at 595 (1) (c) (citations and punctuation omitted). Here, the trial court found that Ellis had first asserted his speedy trial right in August 2015 in a pro se plea in bar that had no legal effect because at that time he was represented by counsel. Thus, the trial court considered only the speedy trial claim set forth in the May 2016 plea in bar, and concluded that this factor "must therefore be weighed against the Defendant."

"While the trial court weighed this factor against [Ellis], it did not specify whether it weighed against him slightly or heavily." *Smith*, supra at 70 (1) (c). Additionally, in its analysis of this factor, the trial court overlooked Ellis' December

16

1, 2014 pro se objection to the withdrawal of his counsel, filed after the court had dismissed his attorney and before the court reinstated counsel. The trial court engaged in no analysis of whether the circumstances of the case mitigated the timing of Ellis' assertion of his right. "[T]he weight to be attributed to this factor may be mitigated in some cases, and whether the circumstances of a particular case warrant any mitigation is a question committed to the sound discretion of the trial court." *Smith*, supra at 71 (1) (c) (citation omitted). On remand, the trial court should consider these factors in determining whether Ellis asserted his right in due course.

(d) *Prejudice to the defendant.*

"The types of prejudice associated with an unreasonable delay before trial include oppressive pretrial incarceration, anxiety and concern of the accused, and the possibility that the accused's defense will be impaired by dimming memories and loss of exculpatory evidence." *Porter*, supra at 529 (4) (citation and punctuation omitted). "Of these forms of prejudice, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *State v. Pickett*, 288 Ga. 674, 677 (2) (c) (4) (706 SE2d 561) (2011) (citation and punctuation omitted).

17

In this case, we find no error in the trial court's findings that the prejudice of Ellis' pretrial incarceration weighs slightly in his favor since he may lose the opportunity to receive a sentence that is at least partially concurrent with the one he is currently serving, see *Leopold v. State*, 333 Ga. App. 777, 783 (1) (d) (777 SE2d 254) (2015), and that Ellis has failed to show that he has suffered any anxiety or concern beyond that which necessarily accompanies serious pending charges. See *Sweatman v. State*, 287 Ga. 872, 875 (6) (700 SE2d 579) (2010). However, we do find that the trial court erred in finding that the defense will not be impaired by the death of material witness Ashley Jones, and in failing to consider whether the death of possible witness Tammy Stansell could be prejudicial.

a. *Ashley Jones*.

In order to show "prejudice due to the unavailability of a witness, [Ellis] must show that the missing witness could supply material evidence for the defense." *Torres v. State*, 270 Ga. 79, 80-81 (2) (508 SE2d 171) (1998) (citations omitted). At the plea in bar hearing, attorney McWhorter testified that Ashley Jones, who died in March 2015, had told him that while she was in custody with the victim, the victim identified herself as a prostitute and recanted her accusations against Ellis. This testimony was

18

an adequate proffer of evidence showing that Jones' death resulted in the loss of potentially exculpatory evidence during the delay of the case.

"To be sure, the death of a critical defense witness or destruction of tangible evidence highly favorable to the defendant would figure prominently in any evaluation of the fourth factor, and it would weigh heavily in favor of finding a violation of the defendant's constitutional right to a speedy trial." *Ruffin*, supra at 64 (2) (6) (iv). Indeed, "[i]f witnesses die or disappear during a delay, the prejudice is obvious." *State v. Redding*, 274 Ga. 831, 834 (561 SE2d 79) (2002) (citation omitted). The trial court's findings to the contrary regarding potential witness Ashley Jones were erroneous and, on remand, the court must take such prejudice into consideration in deciding Ellis' speedy trial claim.

b. *Tammy Stansell.*

In his plea in bar, Ellis also asserted that his ex-wife, Tammy Stansell, who died in October 2013, would have testified that the alleged victim admitted that the rape had never happened. It appears that Ellis made no further proffer of Stansell's alleged testimony at the plea in bar hearing, and we note that Ellis must offer "more than mere speculation" that a witness may have provided material evidence for the

19

defense. See *Dickens v. State*, 280 Ga. 320, 323 (2) (627 SE2d 587) (2006). However, the trial court failed to consider whether Ellis had made an adequate proffer or

> whether this witness's testimony would have been favorable[; instead,] the trial court [simply] concluded that [Ellis] suffered no prejudice because the [allegedly exculpatory] witness's death occurred before [the] case first appeared on a trial calendar. As noted above, however, the trial court failed to consider the pretrial delay between [the arrest in February 2013] and the first scheduled trial date of [November 2013]. If [material] witnesses die or disappear during a delay, the prejudice is obvious[.]

*York*, supra at 588 (2) (b) (iv). Consequently, on remand, in considering the prejudice factor, the trial court must determine whether Ellis has made an adequate proffer of Stansell's purported testimony, and if so, whether Ellis has shown that the witness would have supplied material evidence.

*Judgment vacated and case remanded with direction. Branch and Bethel, JJ., concur.*