**FIRST DIVISION**
**BARNES, P. J.,**
**BROWN and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**February 10, 2022**

# In the Court of Appeals of Georgia

A22A0246. LABBEE v. THE STATE.

BARNES, Presiding Judge.

Following the grant of his application for interlocutory appeal, Jimmy Wayne Labbee appeals from the trial court's denial of his plea in bar asserted on constitutional speedy trial grounds. Because the trial court did not abuse its discretion in denying Labbee's plea in bar, we affirm.

The record reflects that on March 19, 2015, Labbee was arrested on charges of child molestation. He was granted bond on April 18, 2015. After his release on bond, Labbee lived and worked in Tennessee.

On May 17, 2016, a Haralson County grand jury indicted Labbee on one count of aggravated child molestation and four counts of child molestation based on his alleged sexual abuse of three children. On June 30, 2016, Labbee's counsel filed

several pretrial motions, including "Defendant's Waiver of Formal Arraignment, Entry of 'Not Guilty' Plea and Demand for Jury Trial" and a demand for statutory discovery. On July 27, 2016, the State served discovery on defense counsel.

The case first appeared on the September 2016 trial calendar. Labbee filed a motion for a continuance, consented to by the State, in which he sought additional time to review 15 DVDs and approximately 200 pages of documents provided in response to his discovery requests. The trial court granted the motion.

The case was placed on each of the next seven available trial calendars for the Superior Court of Haralson County: February 2017, September 2017, October 2017, February 2018, September 2018, February 2019, and October 2019.[1] In each instance, the case was continued. The trial court granted continuances to Labbee when his counsel was not ready for trial and when the defense's expert witness had a conflict

---

[1] Labbee asserts that the case was also placed on a June 2017 "peremptory calendar" and that the trial court failed to address that procedural fact as part of its analysis, but Labbee provides no citation to the record to support his assertion. "We have repeatedly held that it is not our job to cull the record on behalf of a party. The responsibility to locate and cite evidence in the record rests with counsel, not this [C]ourt." (Citation and punctuation omitted.) *Evans v. State*, 360 Ga. App. 596, 605 (8) (a) (859 SE2d 593) (2021). We decline to address Labbee's conclusory assertion, given his failure to provide any citations to the record to support it. See *Cousin v. Tubbs*, 353 Ga. App. 873, 876 (1), n. 10 (840 SE2d 85) (2020) ("We also decline to address [the appellant's] conclusory assertions[,] . . . given his failure to identify any record evidence supporting these . . . claims[.]").

during the scheduled trial week. The trial court granted continuances to the State

when the new prosecutor assigned to the case announced that he planned to seek entry

of a nolle prosequi order. In some instances, both parties consented to a continuance.

The next available trial calendar was for February 2020, but Labbee's case was

not placed on that calendar because of the prosecutor's repeated statements that he

planned to file a nolle prosequi motion. Ultimately, however, after meeting with the

victims on several occasions and consulting with an assistant district attorney from

another county, the prosecutor decided to continue pursuing the case against Labbee.

Before the case could be placed on a later trial calendar, the Governor of the

State of Georgia declared a public health state of emergency on March 14, 2020 in

response to the unfolding COVID-19 pandemic.[2] See Ga. Exec. Order 03.14.20.01.

That same day, the Chief Justice of the Supreme Court of Georgia entered an order

---

[2] As noted in a prior opinion of this Court,
"The respiratory disease caused by the novel coronavirus, known as 'COVID-19,' is an infectious virus that can spread from person-to-person and can result in serious injury or death." Ga. Exec. Order 03.14.20.01. "It would be a colossal understatement to say that the COVID-19 pandemic has had far-reaching effects. It has changed everything from the way that friends and families interact to the way that businesses and schools operate to the way that courts hear and decide cases." *Swain v. Junior*, 961 F3d 1276, 1280 (11th Cir. 2020).

*VanVlerah v. VanVlerah*, 359 Ga. App. 577, 582 (3), n. 5 (859 SE2d 546) (2021).

declaring a statewide judicial emergency, pursuant to OCGA § 38-3-61, in light of "the continued transmission of Coronavirus/COVID-19 throughout the State and the potential infection of those who work in or are required to appear in our courts." Ga. S. Ct., Order Declaring Statewide Judicial Emergency, at p. 1 (March 14, 2020). The judicial emergency order, among other things, suspended jury trials that had not yet commenced. See id. at p. 2. The judicial emergency order thereafter was extended several times with modifications.

On September 28, 2020, while jury trials remained suspended, Labbee filed his plea in bar and motion for discharge and acquittal, alleging that his constitutional right to a speedy trial had been violated by the delay in his trial.[3] A hearing on the

---

[3] On October 10, 2020, the Chief Justice of the Georgia Supreme Court entered a seventh extension of the judicial emergency order that ended the "blanket suspension" of jury trials, effective immediately. Ga. S. Ct., Seventh Order Extending Declaration of State Judicial Emergency, p. 4 (I) (B) (2) (October 10, 2020). The seventh extension order provided that "[t]he Chief Judge of each trial court is authorized, in his or her discretion, to summon new trial jurors and to resume jury trials, if that can be done safely and in accordance with a final jury trial plan developed in collaboration with the local committee [convened by the Chief Judge] and incorporated into the court's written operating guidelines for in-person proceedings as discussed [later in the extension order]." Id. The Chief Judge of the Tallapoosa Judicial Circuit, which includes Haralson County, convened a local jury trial committee for its first meeting in October 2020. However, on December 23, 2020, "[i]n response to the recent rapid escalation of COVID-19 cases," the Chief Justice of the Georgia Supreme Court entered a modified ninth extension order prohibiting jury trials not already in progress. Ga. S. Ct., Order Modifying Ninth Order Extending Declaration of Statewide Emergency, at p. 1 (December 23, 2020). Subsequently, on

plea in bar was conducted by video conference on February 11, 2021. At the conclusion of the hearing, Labbee requested that the trial court reserve ruling until he filed a supplemental brief. The trial court agreed, and Labbee filed his brief on March 3, 2021. The trial court subsequently entered its order denying Labbee's plea in bar on April 12, 2021. The trial court granted Labbee a certificate of immediate review, whereupon Labbee filed his application for interlocutory appeal, which this Court granted. This appeal followed.

"Both the Sixth Amendment of the United States Constitution and the Georgia Constitution provide that a criminal defendant shall have the right to a speedy trial." (Citation and punctuation omitted.) *Ellis v. State*, 343 Ga. App. 391, 394 (2) (806 SE2d 839) (2017). See U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial[.]"); Ga. Const. of 1983, Art. I, Sec.

---

March 9, 2021, the Chief Justice entered a twelfth extension of the judicial emergency order lifting the prohibition on jury trials because "the surge in COVID-19 cases that led to the suspension of jury trials [had] declined." Ga. S. Ct., Twelfth Order Extending Declaration of State Judicial Emergency, at p. 2 (March 9, 2021). The twelfth extension order contained the same language as the seventh extension order regarding the discretion of the Chief Judge of each trial court to resume jury trials in accordance with a final jury trial plan developed with a local committee and incorporated into the court's operating guidelines. See id. at p. 4 (I) (B) (1). On March 23, 2021, the Chief Judge of the Tallapoosa Judicial Circuit issued jury trial resumption guidelines, but jury trials in Haralson County had not resumed by the time that the trial court issued its decision on Labbee's plea in bar on April 12, 2021.

I, Par. XI (a) ("In criminal cases, the defendant shall have a . . . speedy trial[.]").

When considering constitutional speedy trial claims, courts must conduct the two-part test as delineated in the United States Supreme Court's decisions in *Barker v. Wingo*, 407 U.S. 514 (92 SCt 2182, 33 LE2d 101) (1972), and *Doggett v. United States*, 505 U.S. 647 (112 SCt 2686, 120 LE2d 520) (1992). See *Ruffin v. State*, 284 Ga. 52, 55 (2) (663 SE2d 189) (2008). Under the *Barker-Doggett* test,

> Courts . . . first must consider whether the interval between the defendant's arrest, indictment, or other formal accusation and the trial is sufficiently long so as to be characterized as presumptively prejudicial. If the delay is long enough to invoke the presumption of prejudice, the trial court must balance four factors: (1) whether the delay before trial was uncommonly long, (2) whether the government or the criminal defendant is more to blame for the delay, (3) whether, in due course, the defendant asserted his right to a speedy trial, and (4) whether he suffered prejudice as the delay's result.

(Citations and punctuation omitted.) *Cash v. State*, 307 Ga. 510, 513 (2) (a) (837 SE2d 280) (2019). Application of this test "is committed principally to the discretion of the trial court, and this Court has a limited role in reviewing the trial court's decision." (Citation and punctuation omitted.) *Henderson v. State*, 310 Ga. 231, 235 (2) (850 SE2d 152) (2020). "[W]e must accept the factual findings of the trial court

6

unless they are clearly erroneous, and we must accept the ultimate conclusion of the trial court unless it amounts to an abuse of discretion[.]" *State v. Buckner*, 292 Ga. 390, 391 (738 SE2d 65) (2013).

In the present case, the trial court entered a detailed 79-page order that included extensive findings of fact and conclusions of law explaining its decision. The trial court calculated the length of the delay as the time that had elapsed between Labbee's arrest on March 19, 2015 and the April 12, 2021 order denying his plea in bar, which totaled approximately six years and three weeks. The trial court found that the pretrial delay was presumptively prejudicial and thus triggered consideration of the four *Barker-Doggett* factors; that the length of the delay was uncommonly long and weighed against the State; that the reasons for the delay were attributable to one or both parties in varying degrees, with Labbee "assigned sole and shared responsibility totaling at least 59% of the total delay"; that Labbee waited over five years to assert his constitutional speedy trial right and the delay in asserting his right weighed heavily against him; and that while prejudice against Labbee was presumed because of the lengthy delay in the proceedings, there was no demonstrable evidence of actual prejudice in the record. The trial court then balanced the various factors and concluded that Labbee's constitutional speedy trial right had not been violated.

We will address these determinations by the trial court, each in turn.

1. *The Threshold Inquiry: Presumptive Prejudice.* "Speedy trial rights attach at the time of arrest or formal indictment, whichever is earlier." *Salahuddin v. State*, 277 Ga. 561, 562 (2) (592 SE2d 410) (2004). "Where a trial has not occurred, the delay should be calculated from the date of arrest or other formal accusation to the date on which a defendant's speedy trial motion was granted or denied." *State v. Porter*, 288 Ga. 524, 526 (2) (b) (705 SE2d 636) (2011). Labbee was arrested on March 19, 2015, and the trial court denied his plea in bar on April 12, 2021. "A one-year delay is typically presumed to be prejudicial." *Goins v. State*, 306 Ga. 55, 57 (2) (b) (829 SE2d 89) (2019). Hence, as the State concedes on appeal, the trial court properly found that the approximately six year, three-week delay in this case was presumptively prejudicial and triggered full analysis of the four *Barker-Doggett* factors. See *State v. Pickett*, 288 Ga. 674, 676 (2) (b) (706 SE2d 561) (2011).

2. *The Barker-Doggett Factors.*

(a) *The First Factor: Length of the Delay.* "The first *Barker-Doggett* factor, whether the pretrial delay was uncommonly long, requires courts to analyze the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." (Citation and punctuation omitted.) *Richardson v. State*,

8

318 Ga. App. 155, 158-159 (2) (a) (733 SE2d 444) (2012). As the State concedes on appeal, "a pretrial delay of over five years is uncommonly long, and as such, is a factor to be weighed against the State on the *Barker-Doggett* scale." *Stewart v. State*, 310 Ga. App. 551, 554 (2) (a) (713 SE2d 708) (2011). The trial court therefore properly weighed this factor against the State. See id.

While Labbee contends that the trial court abused its discretion by declining to weigh this factor heavily against the State, we do not agree. "The length of delay that can be tolerated in a particular case depends to some extent on the complexity and seriousness of the charges in that case. And there is no bright-line rule that all uncommonly long delays must be weighed heavily against the State." (Citation and punctuation omitted.) *Jung v. State*, 353 Ga. App. 327, 330 (a) (836 SE2d 640) (2019). The charges against Labbee were serious sexual offenses, and the case involved multiple victims and a large volume of discovery, including 15 DVDs. Additionally, there was a dispute between the parties over the admissibility of certain child hearsay testimony, and the defense retained an expert to challenge the forensic interview process. Under these circumstances, "we cannot conclude that it was an abuse of discretion insofar as the trial court declined to weigh this factor heavily against the State." (Citation and punctuation omitted.) Id. (trial court did not abuse

9

its discretion in declining to weigh four-year pretrial delay heavily against the State in light of parties' evidentiary dispute). See *Durham v. State*, 355 Ga. App. 426, 429 (1) (a) (844 SE2d 499) (2020) (trial court acted within its discretion by not weighing uncommonly long delay of six years heavily against the State, "[a]s the evidence in [the] case involved two victims, with multiple incidents of sexual assault that occurred over a period of months"); *Stewart*, 310 Ga. App. at 554 (2) (a) (trial court acted within its discretion in declining to weigh a pretrial delay of over five years heavily against the State).

(b) *The Second Factor: Reason for Delay.* "The second factor in the *Barker-Doggett* analysis requires the court to examine both the reason for the delay and whether this is attributable to the defendant or the [S]tate." (Citation and punctuation omitted.) *Hayes v. State*, 298 Ga. App. 338, 341 (2) (b) (680 SE2d 182) (2009). "To evaluate the reasons for delay, the court assigns various degrees of weight to the different reasons provided by the prosecution and the defense respectively." *Layman v. State*, 284 Ga. 83, 85 (663 SE2d 169) (2008). "While a deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government, an unintentional delay, such as that caused by the mere negligence of the prosecuting attorneys or the overcrowded docket of the trial court, should be

10

weighted less heavily." (Citations and punctuation omitted.) *Buckner*, 292 Ga. at 394 (3) (b). "Of course, delay caused by the defense weighs against the defendant." (Citation and punctuation omitted.) *Henderson*, 310 Ga. at 236 (2) (b). Guided by these principles, we turn to the specific findings of the trial court, which found that some of the delay was caused by the State, some was caused by Labbee, and some was neutral/caused equally by both parties.

(i) *Delay Caused by the State.* The trial court found that unnecessary delay leading up to the placement of Labbee's case on the first trial calendar (September 2016) was attributable to the State and should be weighed benignly against it. The trial court acted within its discretion in this regard because "[w]hile there was no evidence that the [S]tate had intentionally delayed the trial to hamper the defense, the responsibility for bringing a defendant promptly to trial rests with the government. Although this type of unintentional delay is relatively neutral or benign, it still must be weighted against the [S]tate." (Citation and punctuation omitted.) *Thomas v. State*, 296 Ga. App. 231, 235 (2) (b) (674 SE2d 96) (2009). See *Hardeman v. State*, 280 Ga. App. 168, 170 (2) (633 SE2d 595) (2006) (delay caused by overcrowded docket is attributable to the State).

The trial court also found that some of the delay in the case was caused by the prosecutor's requests for continuances based on his decision (later reversed upon further interviews with the victim and consultation with another prosecutor) to seek entry of a nolle prosequi order. The trial court weighed this portion of the delay "moderately" against the State. While Labbee maintains that the trial court should have weighed the delay more heavily against the State, the trial court found that there was "no evidence of any deliberate attempt by the State to delay the trial," and Labbee has failed to show that the trial court's finding in this regard was clearly erroneous. The trial court therefore acted within its discretion in the manner in which it weighed this portion of the delay. See *Kishel v. State*, 356 Ga. App. 810, 815 (4) (b) (847 SE2d 654) (2020) (trial court correctly weighed the reason for the delay against the State "but not as heavily as in a case of deliberate delay," where the delay was caused by the placement and then removal of the case from the dead docket, and there was "no evidence that the delay was deliberate and intended to hinder the defense") (punctuation omitted). Compare *Hayes v. State*, 298 Ga. App. 338, 343 (2) (b) (680 SE2d 182) (2009) (delay caused by dead docketing of case should have been weighed heavily against the State, where the evidence reflected that the prosecutor

12

made a "strategic and intentional" decision to dead docket the case in order to delay the proceedings so that a co-defendant could be located and tried with the defendant).

(ii) *Delay Caused by Labbee.* The trial court found that some of the delay was caused by Labbee's counsel not being ready for trial and the defense's expert witness having a conflict during a scheduled trial week. These portions of the delay were properly attributed to Labbee. See *Robinson v. State*, 287 Ga. 265, 268 (1) (b) (695 SE2d 201) (2010) ("Because the attorney is the defendant's agent when acting, or failing to act, in furtherance of the litigation, delay caused by the defendant's counsel is charged against the defendant[.]") (citation and punctuation omitted); *Pruitt v. State*, 270 Ga. 745, 748 (3) (514 SE2d 639) (1999) (trial court properly attributed delay to defendant, where defense counsel repeatedly "announced that his experts were not ready for scheduled hearings or trial").

(iii) *Delay Caused by Both Parties*. The trial court found that Labbee and the State bore equal responsibility for the portion of the delay caused by continuances agreed to by both parties. See *Buckner*, 292 Ga. at 394 (3) (b) (concluding that trial court properly weighed portions of the delay caused by continuances agreed to by the parties equally against both of them). However, Labbee argues that the delay caused by the first continuance, which was consented to by both parties, should have been

13

attributed solely to the State because it was the result of the State's failure to timely serve him with a large volume of discovery, including 15 DVDs and approximately 200 pages of documents. We disagree. As the trial court accurately pointed out in its order, Labbee's demand for discovery requested that the State produce discovery to him at least 10 days before trial, and the State produced the discovery at issue 47 days before the anticipated trial date and "only 27 days after [Labbee] opted into discovery." Thus, the record does not support Labbee's assertion that the State's production of discovery was untimely. See OCGA § 17-16-4 (a) (3) (A).[4] Compare *Ellis*, 343 Ga. App. at 397 (4) (b) (delay caused by continuance granted to defendant as a result of the State's failure "to timely provide discovery . . . could not be attributed to [the defendant] since he can hardly be faulted for demanding that the

_____

[4] OCGA § 17-16-4 (a) (3) (A) provides in relevant part:
Except as provided in subparagraph (B) of this paragraph, the prosecuting attorney shall, no later than ten days prior to trial, or as otherwise ordered by the court, permit the defendant at a time agreed to by the parties or ordered by the court to inspect and copy or photograph books, papers, documents, photographs, tangible objects, audio and visual tapes, films and recordings, or copies or portions thereof and to inspect and photograph buildings or places which are within the possession, custody, or control of the state or prosecution and are intended for use by the prosecuting attorney as evidence in the prosecution's case-in-chief or rebuttal at the trial or were obtained from or belong to the defendant.

[S]tate comply with its discovery obligations before trial begins") (citation and punctuation omitted).

(iv) *Delay Caused by the Pandemic-Related Suspension of Jury Trials.* The trial court found that the portion of the delay caused by the suspension of jury trials as a result of the COVID-19 pandemic was "truly neutral." Labbee argues that the delay caused by the jury trial suspension should have been attributed solely to the State and weighed heavily against it because the "State" includes all government actors, "even trial and appellate court judges," *Ruffin*, 284 Ga. at 61 (2) (b) (ii), and "[t]he [S]tate has the duty to bring the defendant to trial following arrest and indictment[.]" *Perry v. Mitchell*, 253 Ga. 593, 596 (322 SE2d 273) (1984).

While we agree with Labbee's general argument that the "State" includes judges and that the duty is on the State to bring the defendant to trial, the pandemic is a "catastrophic and unique event beyond either party's control." *Callender v. Maryland*, No. 1070, 2021 WL 5371209, at *17, 2021 Md. App. LEXIS 1010, at *45 (Md. Ct. Spec. App. Nov. 18, 2021). As one court considering the delay in jury trials caused by COVID-19 has explained,

> [the defendant's] argument that pandemic-related delay should be
> weighed . . . against the Government is unavailing. In *Barker*, the

15

Supreme Court reasoned that a "more neutral reason [for delay] such as negligence or overcrowded courts" should weigh against the Government "since the ultimate responsibility for such circumstances must rest with the government." 407 U.S. at 531[.] . . . In the case of the COVID-19 pandemic, [however,] the Government does not bear the ultimate responsibility for the pandemic; the pandemic is outside of the control of either the parties or the courts.

(Emphasis omitted.) *United States v. Pair*, 522 FSupp3d 185, 194 (E.D. Va. 2021). Because "neither party is responsible for the delays caused by the COVID-19 pandemic," Labbee's argument is misplaced. *United States v. Mayer*, No. 19-CR-0096 (WMW/HB), 2021 WL 2686133, at *9, 2021 U.S. Dist. LEXIS 122205, at *26 (D. Minn. June 30, 2021).

Furthermore, in some cases, a portion of the pretrial delay should not be weighed against the State because the delay is justified and appropriate. See *Kramer v. State*, 287 Ga. App. 796, 798 (1) (652 SE2d 843) (2007) (noting that a portion of the delay "was a justifiable and appropriate delay which cannot be weighted against the State"). See also *Barker*, 407 U.S. at 531 (IV) ("A valid reason, such as a missing witness, should serve to justify appropriate delay."); *Perry*, 253 Ga. at 595 (indicating that the government in some cases can show a valid reason that justifies the delay). Here, the Chief Justice of the Georgia Supreme Court entered the judicial emergency

16

order and its extensions in response to the pandemic in Georgia and the need for social distancing. And, notably, Labbee does not point to any evidence that the Chief Justice could have taken less drastic measures and avoided suspending jury trials as a result of the pandemic; does not point to any evidence that the statewide prohibition on jury trials could have been lifted sooner by the Chief Justice in a manner consistent with public health guidelines; and does not point to any evidence that jury trials could have resumed more quickly in Haralson County in particular. Under these circumstances, even if the State can be said to have caused the pandemic-related delay by suspending jury trials, the delay was justified and appropriate. See *Pair*, 522 FSupp3d at 194 (concluding that the "delay caused by the pandemic is justified"); *State v. Jackson*, No. A21-0126, 2021 WL 5173146, at *3, 2021 Minn. App. LEXIS 291, at *8 (Minn. Ct. App. Nov. 8, 2021) ("The Court's current and continued inability to hold trials in a way that does not put the public, the parties, court staff and counsel at serious risk is a good-faith and reasonable justification for the delay in this matter.") (citation and punctuation omitted).

Accordingly, in light of the record before us, we cannot say that the trial court abused its discretion in finding that the delay in Labbee's trial resulting from the pandemic was a neutral factor that should not be weighed negatively against the State

17

in the manner advocated by Labbee. Our ruling in this regard is in accord with several

other courts that have considered the delay caused by the pandemic in the context of

speedy trial claims and have declined to weigh the delay against the government.[5]

---

[5] See, e.g., *Mayer*, 2021 WL 2686133, at *9, 2021 U.S. Dist. LEXIS 122205, at *26 (concluding that neither the State nor the defendant was responsible for pandemic-related delays); *Pair*, 522 FSupp3d at 194 (concluding that delay caused by the COVID-19 pandemic was outside of the control of the government and was justified); *United States v. Snyder*, No. 2:16cr160, 2021 WL 369674, at *7, 2021 U.S. Dist. LEXIS 20112, at *21 (N.D. Ind. Feb. 3, 2021) ("Nearly all of the delay . . . has been the result of the global pandemic and the resulting inability to conduct a trial in a manner that is safe for jurors, litigants, and court staff. That delay cannot rationally be attributed to the prosecution and cannot be viewed as anything other than completely justifiable."); *United States v. Critchell*, No. CR-20-0086-RAJ, 2020 WL 6874690, at *4, 2020 U.S. Dist. LEXIS 219425, at *12 (W.D. Wash. Nov. 23, 2020) (rejecting argument that government "contributed to the delay" caused by the pandemic, and noting that "[t]he reason for the delay here is not an intentional effort by the Government; it is a factor far beyond its control"); *United States v. Zhukov*, No. 18-CR-633(EK), 2020 WL 6302298, at *3, 2020 U.S. Dist. LEXIS 198888, at *6 (E. D. N. Y. Oct. 27, 2020) ("Thus far, the delay in bringing this case to trial is overwhelmingly attributable to one factor–the COVID-19 epidemic–that is surely beyond the prosecution's control."); *United States v. Smith*, 494 FSupp3d 772, 783 (E.D. Cal. 2020) ("The Court finds the delay to be neither attributable to the Government nor Smith. Instead, the Court's decision to take responsible, emergency health measures to limit the spread of COVID-19 is responsible for the delay. The Court's inability to safely conduct a jury trial is a good-faith and reasonable justification for the delay. One that does not weigh against the Government."); *United States v. Silas*, No. 7:20-CR-2 (HL), 2020 WL 5995592, at *5, 2020 U.S. Dist. LEXIS 187717, at *13 (M.D. Ga. Oct. 9, 2020) (concluding that delay caused by pandemic "cannot be attributed to either party"); *United States v. Crittenden*, No. 4:20-CR-7 (CDL), 2020 WL 5223303, at *3, 2020 U.S. Dist. LEXIS 159331, at *8 (M.D. Ga. Sept. 1, 2020) ("Certainly, a global pandemic that is beyond the control of all the parties involved justifies an appropriate delay. Thus, the 'reason for delay' factor weighs in favor of the delay."); *Callender*, 2021 WL 5371209, at *17, 2021 Md. App. LEXIS 1010, at *45 (concluding that the delay "was

18

(v) *The Trial Court's Ultimate Weighing of the Second Factor.* After properly analyzing the various reasons for the delay as discussed above, the trial court concluded that 39.6 percent of the reason for the delay weighed equally/neutrally against the State and Labbee; 41.2 percent weighed solely against the State; and 19.2 percent weighed solely against Labbee. The trial court then concluded that "[t]he second factor weighs against both the [S]tate and [Labbee] and [Labbee] is assigned sole and shared responsibility totaling at least 59% of the total delay." This ultimate

---

entirely due to the coronavirus pandemic" and should not be weighed against either party because it was outside of either party's control); *Jackson*, 2021 WL 5173146, at *3, 2021 Minn. App. LEXIS 291, at *7 (holding that "neither [the defendant] nor the state are responsible for the delay in commencing the trial when that delay occurred solely because of public-safety concerns due to the COVID-19 pandemic and when the district court was prohibited from holding a jury trial by order of the Chief Justice"); *Berryman v. State*, No. 2020-KA-00710-COA, 2021 WL 5192852, at *8, 2021 Miss. App. LEXIS 460, at *25 (Miss. Ct. App. Nov. 9, 2021) (concluding that delay caused by pandemic "is neutral and is not weighed against either party"); *State v. Lewis*, No. 28962, 2021 WL 2285309, at *12, 2021 Ohio App. LEXIS 1861, *33 (Ohio App. June 4, 2021) ("The State was not responsible for the unusual circumstances surrounding the pandemic, and there is no evidence of any State neglect. As a result, this factor does not aid [the defendant's] claim."); *Commonwealth v. Murphy*, No. 0197-21-2, 2021 WL 3501732, at *6, 2021 Va. App. LEXIS 151, * 17 (Va. Ct. App. Aug. 10, 2021) (concluding that trial court "should . . . have classified the cause for the delay attributable to the pandemic as valid and unavoidable because it was outside the Commonwealth's control").

19

conclusion was error because the trial court should have simply weighed the second factor against the State.

When both parties bear equal responsibility for a portion of the delay or the reason for the delay is otherwise neutral, that specific portion of the delay should not be weighed for or against either side. See *Robinson*, 287 Ga. at 268 (1) (b). Thus, under the trial court's allocation of responsibility for the delay, 39.6 percent of the delay should not have been weighed for or against either party. See id. When the State bears sole responsibility for some portion of the delay and the defendant bears sole responsibility for other portions, the second factor should be weighed against the party responsible for the greater portion of the delay. See *Gray v. State*, 347 Ga. App. 235, 241 (3) (b) (ii) (817 SE2d 723) (2018). Accordingly, because under the trial court's analysis the State was solely responsible for a greater percentage of the delay than Labbee (41.2 percent versus 19.2 percent), the second factor should have been weighed against the State, and the trial court erred in concluding otherwise. See id.

(c) *The Third Factor: Assertion of the Right.* "The third *Barker-Doggett* factor requires courts to analyze whether the defendant timely asserted his constitutional right to a speedy trial." *Richardson*, 318 Ga. App. at 161 (2) (c).

> Though the State bears the burden to ensure that an accused is brought to trial promptly, the accused bears some responsibility to invoke the speedy trial right and put the government on notice that he would prefer to be tried as soon as possible. . . . And because delay often works to the defendant's advantage, the failure of the accused to assert his right in due course generally is accorded strong evidentiary weight.

(Citations and punctuation omitted.) *Buckner*, 292 Ga. at 396-397 (3) (c). Determining "whether the accused has asserted his speedy trial right 'in due course' . . . requires a close examination of the procedural history of the case with particular attention to the timing, form, and vigor of the accused's demands to be tried immediately." (Footnotes omitted.) *Ruffin*, 284 Ga. at 63 (2) (b) (iii).

The trial court examined the record and found that Labbee did not assert his constitutional right to a speedy trial until he filed his plea in bar on September 28, 2020, which was approximately 5 years, 6 months after his arrest. Given the length of the delay, the trial court acted within its discretion in weighing the third factor heavily against Labbee. See *Buckner*, 292 Ga. at 397 (3) (c) (trial court did not abuse its discretion in weighing third factor heavily against the defendant, where the defendant waited almost four years after his indictment to invoke his right); *Jung*, 353 Ga. App. at 332 (c) (concluding that "the trial court properly weighed the third factor

21

heavily against [the defendant] because he did not raise his constitutional right to a speedy trial until four years after his arraignment").

Labbee contends that the trial court erred in its analysis because he invoked his constitutional speedy trial in a motion he filed earlier in the case. Specifically, Labbee relies on his motion filed on June 30, 2016, entitled "Defendant's Waiver of Formal Arraignment, Entry of 'Not Guilty' Plea and Demand for Jury Trial," which stated in its entirety:

> NOW COMES the Defendant and hereby **waives formal arraignment**, enters a plea of "**not guilty**" to all pending charges, and demands a **trial by jury** pursuant to Art. I, Sec. I, Par. XI (a) and Art. I, Sec. I, Par. I of the Georgia Constitution, as well as pursuant to the Sixth and Fourteenth Amendments of the United States Constitution.

(Emphasis in original.) But the language of the motion reflects that Labbee was demanding a trial by jury, and "the filing of a demand for a jury trial does not also invoke a defendant's constitutional right to a speedy trial." *Jung*, 353 Ga. App. at 331 (c). See *State v. Johnson*, 274 Ga. 511, 513 (3) (555 SE2d 710) (2001). And while Labbee argues that his general citations to the Georgia Constitution[6] and to the Sixth

---

[6] Ga. Const. of 1983, Art. I, Sec. 1, Par. I provides: " No person shall be deprived of life, liberty, or property except by due process of law." Ga. Const. of 1983, Art. I, Sec. I, Par. XI (a) provides:

Amendment to the United States Constitution[7] were sufficient to invoke his constitutional right to a speedy trial, a defendant invoking his speedy trial right must do so in a manner "concretely enough" to put the government on notice that he would prefer to be tried as soon as possible. *Ruffin*, 284 Ga. at 63 (2) (b) (iii). Given that the title and text of Labbee's June 30 motion expressly demanded a trial by jury but made no explicit reference to a speedy trial, the trial court properly found that Labbee did not sufficiently invoke his constitutional speedy trial right for purposes of the third *Barker-Doggett* factor until he filed his plea in bar on September 28, 2020. See *Over v. State*, 302 Ga. App. 215, 218 (3) (690 SE2d 507) (2010) (rejecting argument that defendant's jury trial demands should be construed as speedy trial demands because

The right to trial by jury shall remain inviolate, except that the court shall render judgment without the verdict of a jury in all civil cases where no issuable defense is filed and where a jury is not demanded in writing by either party. In criminal cases, the defendant shall have a public and speedy trial by an impartial jury; and the jury shall be the judges of the law and the facts.

[7] U. S. Const. amend. VI provides:
In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

they cited Ga. Const. of 1983, Art. I, Sec. I, Par. XI (a), given that the "jury trial demands themselves . . . included no explicit speedy trial demands, and . . . a demand for jury trial does not invoke a constitutional right to a speedy trial").

(d) *The Fourth Factor: Prejudice.* The fourth *Barker-Doggett* factor requires courts to "consider three interests: preventing oppressive pretrial incarceration, minimizing anxiety and concern of the defendant, and limiting the possibility that the defense will be impaired." *Layman v. State*, 284 Ga. 83, 86 (663 SE2d 169) (2008). "Of these forms of prejudice, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." (Citation and punctuation omitted.) *Henderson*, 310 Ga. at 239 (2) (d).

In addition to the aforementioned three interests, courts must consider the length of the delay in assessing prejudice. See *Williams v. State*, 279 Ga. 106, 109 (1) (d) (610 SE2d 32) (2005) ("The length of the delay is then considered a second time by factoring it into the prejudice prong of the *Barker* analysis[.]") (citation and punctuation omitted). "[O]nce the threshold of presumptive prejudice is satisfied, a presumption of prejudice always exists, although it increases in weight over time." *Porter*, 288 Ga. at 531 (2) (c) (4). See *Williams v. State*, 277 Ga. 598, 601 (1) (d) (592 SE2d 848) (2004) (noting that the "greater pretrial delays simultaneously increase the

degree of prejudice presumed and decrease the expectation that the defendant can demonstrate tangible prejudice to his or her ability to present a defense"). "[C]onsideration of prejudice is not limited to the specifically demonstrable, and . . . affirmative proof of particularized prejudice is not essential to every speedy trial claim." *Doggett*, 505 U.S. at 655 (III) (A). But

> [t]he weight given to the prejudice factor may be bolstered if the defendant can demonstrate some actual impairment to his defense in addition to prejudice that is presumed from the passage of time. Likewise, the weight given to presumed prejudice may be reduced or even eliminated if the State can show that the defense has not, in fact, been substantially impaired.

*Porter*, 288 Ga. at 532 (2) (d).

The trial court concluded that it would presume prejudice from the length of the pretrial delay. The trial court also considered the three specific forms of prejudice, finding that there was no evidence of oppressive pretrial incarceration, no evidence that Labbee had suffered undue anxiety or concern caused by the pretrial delay, and no evidence that Labbee's defense had suffered any actual impairment resulting from the delay in the proceedings.

25

The trial court did not abuse its discretion by presuming prejudice from the over six-year pretrial delay. See *Pickett*, 288 Ga. at 677 (2) (c) (4). The trial court also properly considered each specific type of prejudice as part of its analysis of the fourth *Barker-Doggett* factor. See *Porter*, 288 Ga. at 532 (2) (d); *Stewart*, 310 Ga. App. at 558 (2) (d). See also *Cash*, 307 Ga. at 518 (2) (b) (iv) (rejecting argument that delay in excess of five years created presumption of actual prejudice that foreclosed trial court from considering other factors as part of its prejudice analysis). Labbee, however, contends that the trial court should have found that he experienced undue anxiety and concern from the delay and, therefore, should have concluded that there was demonstrable evidence of actual prejudice rather than only a presumption of prejudice.[8] We disagree.

At the hearing on his plea in bar, Labbee testified that after the prosecutor decided not to seek a nolle prosequi order, he felt "trapped" and that "all [of his] hopes of moving forward and getting on with [his] life were just demolished." Labbee claimed that he suffered from PTSD and other emotional problems as a result of the pretrial delay, and defense counsel asserted that Labbee had "been declared 70

---

[8] Labbee does not contend that there was any evidence in the record of oppressive pretrial incarceration or of actual impairment to his defense caused by the pretrial delay.

percent disabled as a result of the trauma." In its order, however, the trial court noted that Labbee had not met with an expert to evaluate the state of his mental health and did not present any probative evidence supporting his claim of being 70 percent disabled. The trial court further found that Labbee had testified that he was a military veteran who had served in Afghanistan in a war zone, and that there was other witness testimony presented at the hearing that Labbee had been suffering emotional problems stemming from his military service. As the trier of fact on these issues, the trial court was entitled to resolve any conflicts in the evidence and decline to credit Labbee's testimony about his level of anxiety and its cause. See *Burney v. State*, 309 Ga. 273, 291 (4) (d) (845 SE2d 625) (2020). Accordingly, the trial court acted within its discretion in concluding that Labbee had not suffered any undue anxiety or concern caused by the pretrial delay. See *Carder v. State*, 312 Ga. App. 61, 66 (2) (d) (717 SE2d 661) (2011) (concluding that "the trial court was within its discretion when it concluded that [the defendant's] anxiety and depression were not caused by the delay," where there was evidence that the defendant's "anxiety and concern [were] caused by the accident giving rise to the charges against her . . . [rather than] the delay in the prosecution of those charges"). See generally *Mullinax v. State*, 273 Ga. 756, 759 (2) (545 SE2d 891) (2001) ("Anxiety and concern of the accused are

always present to some extent, and thus absent some unusual showing are not likely to be determinative in defendant's favor.") (citation and punctuation omitted).

(e) *Balancing of the Four Factors.* As explained above, the trial court correctly analyzed the first, third, and fourth *Barker-Doggett* factors. As to the second *Barker-Doggett* factor, the trial court properly analyzed the various reasons for the delay, but ultimately erred in failing to weigh that factor against the State.

> However, even if the trial court significantly misapplies the law or clearly errs in a material factual finding, the trial court's exercise of discretion can be affirmed if the appellate court can conclude that, had the trial court used the correct facts and legal analysis, it would have had no discretion to reach a different judgment.

(Citation and punctuation omitted.) *Dillard v. State*, 297 Ga. 756, 762 (3) (778 SE2d 184) (2015). Here, if the trial court had properly weighed the second factor against the State (albeit not heavily, given that there was no deliberate effort by the State to delay the case), the trial court still would have been compelled to deny Labbee's plea in bar, given his long delay in asserting his constitutional right to a speedy trial and his failure to demonstrate any actual prejudice. See id. at 763 (3) (concluding that "even if the trial court had properly weighed the second factor lightly against the government, it was incumbent upon the trial court to find no constitutional error

28

given appellant's long delay in asserting his right to a speedy trial and his failure to demonstrate prejudice"). We therefore affirm the trial court exercise of its discretion in denying Labbee's plea in bar on constitutional speedy trial grounds. See id.; *De La Cruz v. State*, 303 Ga. 24, 31 (6) (iv) (810 SE2d 84) (2018) (holding that although the trial court erred by not weighing the second *Barker-Doggett* against the government, the trial court's ruling still would be affirmed because of the defendant's long delay in asserting his speedy trial right and his failure to show any prejudice); *Ruffin*, 284 Ga. at 65-66 (3) (concluding that even though trial court misapplied the second *Barker-Doggett* by failing to weigh it against the government, the trial court's denial of the defendant's speedy trial motion nevertheless would be affirmed because the defendant "failed to present any persuasive evidence of prejudice" and "asserted [his] speedy trial right relatively late in the process") (punctuation omitted). See also *Harris v. State*, 284 Ga. 455, 457 (667 SE2d 361) (2008) (affirming denial of defendant's speedy trial motion, despite the over five-and-one-half years delay in the case, because the presumptive prejudice arising from the delay was outweighed by the defendant's lengthy delay in asserting his speed trial right and the absence of any demonstrable prejudice to his defense); *Carder*, 312 Ga. App. at 67 (2) (e) (concluding that although there had been an over five-year delay in the case, the

defendant's speedy trial motion was properly denied, given that the defendant "suffered little actual prejudice to her defense, suffered no unduly oppressive pretrial incarceration and waited a significant amount of time before asserting her right to a speedy trial").

*Judgment affirmed. Brown and Hodges, JJ., concur.*